IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF OHIO
EASTERN DIVISION

| | |
|---|---|
| Laura B. Morton, | Case No: 2:18-cv-445 |
| Plaintiff, | Judge Graham |
| v. | Magistrate Judge Deavers |
| Kevin John O'Brien, *et al.*, | |
| Defendants. | |

Opinion and Order

Plaintiff Laura B. Morton brings this action under the Fair Debt Collection Practices Act, 15 U.S.C. § 1692e, against attorney Kevin John O'Brien and his law firm Kevin O'Brien & Associates Co., L.P.A.  This matter is set for a jury trial on December 13, 2021.  Before the court are motions in limine filed by the parties.

I.   Plaintiff's Motion in Limine

A.   Reference to Plaintiff's Claim for Attorney's Fees

The complaint requests an award of attorney's fees under 15 U.S.C. § 1592k, whereby the court is to award reasonable attorney's fees and costs to a prevailing plaintiff.  Plaintiff moves to exclude as irrelevant and prejudicial any reference by defendants to plaintiff's claim for attorney's fees.  Plaintiff is concerned that defendants would raise the matter in order to prejudice the jury and lead them to reduce or offset any damages award by the amount of fees.

Defendants oppose plaintiff's motion, arguing that the "jury has a right to understand" plaintiff's fee arrangement with her attorney.  Doc. 89 at PAGEID 593.  Defendants, without citing any legal authority, contend that the jury "should be aware" that plaintiff's counsel is seeking a significant fee award.  *Id.*

The court readily concludes that any potential post-judgment claim for attorney's fees by plaintiff is irrelevant to the issues of liability and damages to be tried before the jury.  Further, defendants' response brief makes clear the risk of prejudice involved – defendants would attempt to use plaintiff's claim for attorney's fees to portray plaintiff's counsel as being motivated by money and would seek to cause the jury to discount its view of plaintiff's case and damages accordingly.  *See*

1

*Fisher v. City of Memphis*, 234 F.3d 312, 319 (6th Cir. 2000) (prejudicial for jury to be instructed on the potential for attorney's fees in an action under 42 U.S.C. § 1983).

Thus, this prong of plaintiff's motion is granted, and the court will exclude any reference to plaintiff's claim for attorney's fees.

> **B. Evidence of the Existence and Duration of Defendants' Attorney-Client Relationship with Columbus Checkcashers and PLS Financial**

One of plaintiff's claims is that defendants violated the FDCPA by misrepresenting that they had the authority to collect a debt owed to Columbus Checkcashers, Inc. (CCC). Plaintiff argues that in order to support her claim she should be able to present evidence concerning when the attorney-client relationship between defendants and CCC ended. In particular, plaintiff claims that PLS Financial, a corporate entity engaged by CCC to manage its debt collections activity, terminated the relationship with defendants before defendants attempted to collect a debt from plaintiff on behalf of CCC.

Defendants only response to plaintiff is that the nature of the fee arrangement between defendants and CCC/PLS is privileged. But it must be noted that plaintiff does not seek to introduce evidence of defendants' fee arrangement.

The court finds that plaintiff may introduce evidence of the existence and duration of the attorney-client relationship between defendants and CCC/PLS. Under Ohio law, "the privilege extends to 'communications' made in the attorney-client relationship, not the fact that an attorney-client relationship exists." *Pales v. Fedor*, 2018-Ohio-2056, ¶ 26, 113 N.E.3d 1019, 1029 (Ohio Ct. App.) (citing cases). Moreover, the issue of when CCC/PLS terminated its relationship with defendants is directly relevant to plaintiff's claim that defendants misrepresented their authority to act on behalf of CCC.

Thus, this prong of plaintiff's motion is granted, and the court will allow plaintiff to introduce evidence of the existence and duration of the attorney-client relationship between defendants and CCC/PLS.

> **C. Defendants' Exhibit L, Skip Trace Report**

Defendants' Trial Exhibit L is a document called a "skip trace report," which is generated by a credit reporting agency and provides information (legal name, address, employment) about a person. Exhibit L appears to relate to Laura L. Morton, plaintiff's daughter. Defendants would use Exhibit L to establish that Laura L. Morton was also listed as Laura B. Morton (plaintiff's name) on the skip trace report and that one of her residential addresses was listed as plaintiff's address. Mr.

2

O'Brien would then be expected to testify that he relied on Exhibit L in misdirecting the May 3, 2017 debt collection letter to plaintiff. Defendants assert that Exhibit L and Mr. O'Brien's testimony will support their bona fide error defense.

Plaintiff objects to Exhibit L on the grounds that the document is not authenticated and it post-dates the events at issue in this case. Exhibit L has a report date of August 17, 2018.

Defendants state that they intend to call a representative of TransUnion, the agency which generated Exhibit L. The TransUnion representative will authenticate the report and testify that the information contained therein is static and appears just the same as it would have for a skip trace report run shortly before the May 3, 2017 debt collection letter. Further, defendants state that Mr. O'Brien will testify that he routinely relied on TransUnion skip trace reports and that Exhibit L contains the same information he relied on prior to sending the letter to plaintiff and speaking to her on the telephone.

The court will provisionally deny plaintiff's motion. The court finds that defendants should have an opportunity at trial to authenticate Exhibit L and to lay a foundation. If they do, a jury should decide whether Mr. O'Brien's testimony about relying on the skip trace report is credible and supports a bona fide error defense.

### D. Allegations of Improper Conduct by Plaintiff's Counsel or Witnesses

Defendants have accused plaintiff's counsel and one of plaintiff's witnesses, Gillian Madsen of PLS, of conspiring to ruin Mr. O'Brien's reputation and livelihood. Defendants claim that this lawsuit and others filed by plaintiff's counsel are frivolous and that PLS filed a baseless report against Mr. O'Brien with the Ohio Supreme Court for an ethics violation. Defendants argue that they "should be permitted to comment upon the conduct of Ms. Madsen and [plaintiff's counsel] at trial." Doc. 89 at PAGEID 599.

The court grants plaintiff's motion to exclude any commentary, references, or testimony about alleged improper conduct by plaintiff's counsel or Ms. Madsen. In denying defendants' dispositive motion, the court made quite clear that this lawsuit is not frivolous. Further, commentary about external matters such as the ethics report and the alleged conspiracy are wholly irrelevant and would be highly prejudicial. Defendants' counsel is instructed to limit the presentation of his case and defense to the merits of the lawsuit.

### E. Plaintiff's Exhibit 12, State Court Order

Plaintiff's Trial Exhibit 12 is a state court order dated July 17, 2018. Doc. 87-2. It was issued in a collections action brought by CCC against a debtor. CCC was represented by Mr.

3

O'Brien.  CCC filed a motion to disqualify Mr. O'Brien as its legal counsel, however, because Mr. O'Brien had sued CCC/PLS for breach of contract and failure to reimburse amounts allegedly owed to him.  The state court, in its July 17, 2018 order, granted the motion to disqualify Mr. O'Brien as counsel because of the potential conflict of interest created by his suit against his client.

Plaintiff argues that Exhibit 12 should be admitted at trial because it is relevant to damages. Under the FDCPA, in determining the amount of damages, the fact-finder must consider the "frequency and persistence of noncompliance" and the "extent to which such noncompliance was intentional."  15 U.S.C. § 1692k(b)(1).

The court finds that Exhibit 12 is irrelevant to the issues of the frequency of noncompliance or the intentionality of defendants' alleged conduct in this action.  The state court case was not an FDCPA suit and the state court's order found that Mr. O'Brien had a conflict of interest, not that he had violated the FDCPA.  Exhibit 12 would also be highly prejudicial, in that it reflects that a state court judge removed Mr. O'Brien from a case due to ethical considerations.

Thus, the court denies this prong of plaintiff's motion and excludes Exhibit 12 as inadmissible.

### F. Affirmative Defenses

Plaintiff moves to preclude defendants from presenting any affirmative defenses beyond what the FDCPA allows.  Defendants respond that the only defense they intend to present to the jury is that of a bona fide error, which is expressly allowed under the FDCPA, 15 U.S.C. § 1692(c).

The court denies this prong of plaintiff's motion as moot.

## II. Defendants' Motion in Limine

### A. Disciplinary Matters before the Ohio Supreme Court

Defendants seek to exclude any evidence concerning alleged ethical violations by Mr. O'Brien which PLS has reported to the Ohio Supreme Court.  Plaintiff responds that she has no intention of introducing any evidence about ethics violations by Mr. O'Brien.

The court denies this prong of defendants' motion as moot.

### B. Gillian Madsen's Testimony

Plaintiffs intend to call Gillian Madsen, corporate counsel for PLS, to testify concerning emails that were sent in 2012 by PLS to Mr. O'Brien.  According to plaintiff, the emails would show that PLS terminated its relationship with Mr. O'Brien in 2012 and that he acted without authority in attempting to collect the debt allegedly owed by plaintiff to CCC.

4

Defendant argues that Ms. Madsen should not be allowed to testify because she does not have personal knowledge of the emails. Defendants point out that she did not send the emails and was not employed by PLS at the time they were sent.

Plaintiff responds that Ms. Madsen will not be called as a witness with personal knowledge of the events at issue. Rather, plaintiff will call Ms. Madsen as an individual competent to testify as to the business records of PLS. *See* Fed. R. Evid. 803(6). Plaintiff points to Ms. Madsen's affidavit as proof of the likelihood that plaintiff will be able to establish that she is qualified to offer such testimony. Doc. 31-7 at ¶ 7 (concerning the search of emails conducted by PLS's information-technology department).

The court will provisionally deny this prong of defendants' motion. Plaintiff will be allowed the opportunity at trial to establish under Fed. R. Evid. 803(6) that Ms. Madsen is competent to testify as to PLS's business records. And defendants will be given the opportunity to challenge that she is competent to so testify.

### C. Corporate Successor of CCC

Separately, defendants argue that Ms. Madsen should be excluded as a witness because she is employed by PLS Financial Services, and not by the PLS entity, PLS Financial Solutions of Ohio, Inc., that later became the corporate successor of CCC in 2016.

The court denies this prong of defendants' motion. Ms. Madsen has stated in her affidavit, and is expected to testify, that in her review of the business records of PLS Financial Services, she found that PLS Financial Services was engaged by CCC in 2012 to manage CCC's collections activities, including reviewing and terminating contracts with outside legal counsel. Doc. 31-7 at ¶ 3. Because Ms. Madsen will be testifying about the business records of PLS Financial Services, and not of CCC, the court finds that it is immaterial that Ms. Madsen is not employed by CCC's corporate successor.

### D. Plaintiff's Exhibit 12, State Court Order

Defendant moves to exclude plaintiff's Exhibit 12. For reasons already discussed, this prong of defendants' motion is granted.

### III. Conclusion

Accordingly, plaintiff's motion in limine (doc. 87) is granted in part and denied in part, and

5

defendants' motion in limine (doc. 86) is granted in part and denied in part.

s/ James L. Graham<br>
JAMES L. GRAHAM<br>
United States District Judge

DATE: December 7, 2021