IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF OHIO
EASTERN DIVISION

| | | |
|---|---|---|
| Laura B. Morton, | : | |
| Plaintiff, | : | Case No.: 18 CV 445 |
| v. | : | Judge: Graham |
| Kevin John O'Brien, et al., | : | Magistrate: Preston-Devers |
| Defendants. | : | |

## DEFENDANTS' FED.R.CIV.P.50 MOTION
## FOR JUDGMENT NOTWITHSTANDING THE VERDICT

Now come the Defendants, by and through Counsel, and, pursuant to the provisions of

Fed.R.Civ.P. 50(b), respectfully move the Court to issue a judgment notwithstanding the verdict with

respect to the issues outlined below.

Respectfully submitted,

/s/ Jeffrey A. Catri

Jeffrey A. Catri (0019028)

## MEMORANDUM

**Plaintiff is Not Entitled to Any Actual Damages**

In this case, the jury awarded the sum of $50,000.00 in actual damages in favor of the Plaintiff

and against the Defendant. For the reasons which follow, Plaintiff is not legally entitled to any actual

damages against the Defendant because Plaintiff failed to prove any actual damages.

15 U.S.C. 1692k(a)(1) provides:

(a) Except as otherwise provided by this section, any debt collector who fails to comply with any
provision of this subchapter with respect to any person is liable to such person in an amount
equal to the sum of:

1

(1) Any actual damage sustained by such person as a result of such failure.

Neither this section nor any other part of the Consumer Credit Protection Act using the term explicitly defines "actual damage". Elsewhere, actual damages are defined as "an amount awarded to a complainant to compensate for a proven injury or loss; damages that repay actual losses—also termed compensatory damages," Black's Law Dictionary, 394 (7th Ed., 1999).

Congress left it to the courts a apply the tern "actual damages" to particular cases in accordance with the purposes of the FDCPA and with developing principles of federal common law. Courts commonly allow damages to a Plaintiff for emotional distress and relational injuries under the FDCPA. Courts have generally agreed that emotional distress damages can be awarded in FDCPA cases without having to meet state law requirements for tort claims such as negligent or intentional infliction of mental distress. The term "actual damages" as used in the Consumer Credit Protection Act, clearly includes out-of-pocket losses, physical injuries, and injury to the sensibilities or psyche, 15 U.S.C. 1601-1700. Given this basis for judicial interpretation, it is not necessary for the courts to look to state law: "Where Congress borrows terms of art in which are accumulated....legal tradition and meaning...it presumably knows and adopts the cluster of ideas that were attached...and the meaning its use will convey to the judicial mind," *Morissette v. United States*, 342 U.S. 246, 263 (1952).

The broad legal meaning of the term "actual damages" had already been developed in FCRA and Equal Credit Opportunity Act (ECOA) cases when Congress adopted the FDCPA. In *Carey v. Piphus*, 435 U.S. 247 (1978), a procedural due process case brought under 42 U.S.C. 1983, the Court stated that "[d]istress is a personal injury familiar to the law," and that "[w]e use the term "distress" to include mental suffering or emotional anguish," at p. 263. The Court defined actual injury to include a variety of psychological harms, as well as pecuniary loss and physical injury.

Non-pecuniary damages must be based on evidence. Mental and other injuries claimed as actual damages must be proved by competent evidence, *Doe v. Chao*, 540 U.S. 614 (2004); *Carey v.*

2

*Piphus*, supra; *Gertz v. Robert Welch, Inc.*, 418 U.S. 323 (1974); *Rasor v. Retail Credit Co.* (1976), 87 Wash.2d 516; *Shuman v. Standard Oil of California*, 453 F.Supp. 1150 (1978). In *Doe v. Chao, supra,* Buck Doe filed a black lung claim with the U.S. Department of Labor. The agency used Doe's social security number to identify his claim on official agency documents, including a multicaptioned hearing notice that was sent to a group of claimants, their employers and lawyers. Doe and other black lung claimants sued the Department of Labor claiming that such disclosures violated the Privacy Act of 1974. Doe's claim fell within 5 U.S.C. 552a(g)(1)(D)—if a court determines that the agency acted in an "intentional or willful" manner, the Government is liable for "actual damages sustained by the individual...but in no case shall a person entitled to recovery receive less than ...$1,000.00,".
5 U.S.C. 552a(g)(4)(A).

The U.S. Supreme Court held that "[t]he United States is subject to a cause of action for the benefit of at least some individuals adversely affected by a federal agency's violation of the Privacy Act of 1974. The question before us is whether plaintiffs must prove some actual damages to qualify for a minimum statutory award of $1,000.00. We hold they must," at 616. The Fourth Circuit affirmed in part, but reversed on Doe's claim, holding the United States entitled to summary judgment across the board, 306 F.3d 170 (2002). The Circuit Court treated the $1,000 statutory minimum as available only to plaintiffs who suffered actual damages because of the agency's violation, *Id.*, at 176-179. The Court held that "Doe had not raised a triable issue of fact about actual damages, having submitted *no corroboration* for his claim of emotional distress, such as evidence of physical symptoms, medical treatment, loss of income, or impact on his behavior. In fact, the only indication of emotional affliction was Doe's conclusory allegations that he was "torn...all to pieces" and "greatly concerned and worried" because of the disclosure of his social security number and its potentially "devastating" consequences," *Id.*, at 181. Doe petitioned for review of the holding that some actual damages must be proven before a plaintiff may receive the minimum statutory award. " Because the Fourth Circuit's decision requiring

3

proof of actual damages conflicted with the views of other Circuits, we granted certiorari. We now affirm," at 617-618.

Some Sixth Circuit and Ohio federal courts have held that in an FDCPA case a plaintiff must show "more than transitory symptoms of emotional distress," *Miller v. Prompt Recovery Servs.*, 213 U.S.Dist. 88203\*, U.S. Dist. Court, N.D., Ohio, E.D., June 24, 2013, citing *Davis v. Creditors Interchange Receivable Mgmt, L.L.C.,* 585 F.Supp.2d 968, 976 (N.D., Ohio, 2008), quoting *Costa v. Nat'l Action Fin. Servs.,* 634 F.Supp.2d 1069, 1079 (E.D., CA, 2007). Further, the Court held that a plaintiff "must explain the circumstances of [her] injury in reasonable detail," and must not "rely on conclusory statements" unless the "facts underlying the case are so inherently degrading that it would be reasonable to infer that a person would suffer emotional distress from the defendant's action," *Davis, supra,* at 976.

In *Miller, supra,* the District Court held that "plaintiff's conclusory assertions that she was very upset and anguished are insufficient to support a claim for actual damages, especially in light of the fact that the brief phone encounter with plaintiff's son was not so inherently degrading that a reasonable person would have suffered emotions distress. *See, Costa v. Nat'l Action Fin. Servs., supra* (sleeplessness, shaky hands, and anxiety for which plaintiff did not see a doctor insufficient to establish actual damages under the FDCPA); *Tallon v. Lloyd & McDaniel,* 497 F.Supp.2d 847 (W.D., KY, 2007) (conclusory statements in affidavit describing the experience with debt collector as "extremely stressful, embarrassing and humiliating" insufficient to support a recovery of emotional damages under the FDCPA). Courts considering actual damages under the Fair Credit Reporting Act (FCRA) have rejected similar conclusory statements offered in support of emotional damages.*See, e.g. Wantz v. Experian Info Solutions*, 386 F.3d 829 (7th Cir., 2004) (feelings of humiliation and embarrassment did not support actual damages under the damages provisions of the FCRA); *Cousins v. Trans Union Corp.* 246 F.3d 359, 371 (5th Cir., 2001) (conclusory assertions about being "very upset" and "angry" were insufficient to support actual damages under the FCRA).

4

Proof that a claimed injury occurred might consist of testimony of a witness that the consumer had, or had complaint of, a headache shortly after an offensive phone call, *Read v. Amana Collection Servs.,* 1991 WL 165033, 1991 U.S. Dist. LEXIS 21773 (W.D.N.Y., January 15, 1991), actual damages for emotional distress were not established by consumer's testimony that she was angry, tense and forced to increase her asthma medication, which did not require a medical exam. "Evidence of the extent and duration of the injury should also be introduced. While it is the province of the jury to determine the causal link between the violation and the injury it is usually critical to provide evidence of causation," Fair Debt Collection, National Consumer Law Center, Inc., 2008, at p. 336.

In the case, *sub judice,* the Plaintiff testified that she received a collection letter for Laura (no middle initial) Morton from Defendants at her home address on May 8, 2017. Plaintiff testified that she is not the judgment debtor in the case of *Columbus Checkcashers, Inc. v. Laura Morton,* 2016 CVI 009549. Indeed, the judgment debtor in that case is the Plaintiff's daughter, who has the same first and last names as the Plaintiff. Plaintiff testified that she knew the debt with Columbus Checkcashers was not her debt, but, rather, her daughter's debt. Plaintiff testified that she knew that she was not responsible for the debt.

Plaintiff testified that, when she received the letter from the Defendants, she was "concerned", but knew that she was not responsible for the debt. Plaintiff testified that she called her daughter, also named Laura Morton, and decided to place a three-way call to the Defendants' office on May 8, 2017, hours after receiving Defendants' letter. During the call, Plaintiff and her daughter explained to Defendants that the loan was the daughter's, not Plaintiff's, and that the home on Fairgate belonged to Plaintiff and her husband, not the daughter. Defendants listened, carefully, to the Plaintiff and asked the Plaintiff to provide Defendants with her social security number. Plaintiff admitted at trial that Defendants requested her social security number. After Plaintiff provided Defendants with her social security number, Defendants testified that they told the Plaintiff that the debt in question was not

5

Plaintiff's debt, that the lien followed the judgment debtor, only, pursuant to Ohio statute and case law, and that Plaintiff was not subject to foreclosure and had nothing to fear from Defendants. During the call, the Plaintiff was cooperative and told O'Brien that she understood the information O'Brien provided to the Plaintiff. During the call, Plaintiff's daughter was irate and abusive and made the call challenging. Defendants ultimately terminated the call.

After the telephone call with Defendants, Plaintiff testified that, *for a period of time*, Plaintiff was worried and concerned that her home might be taken from her in an impending foreclosure, and that there was nothing she could do to prevent it. Plaintiff testified that she felt pressured to pay the loan with Columbus Checkcashers, Inc., even though she knew she was not responsible for it. Plaintiff testified that she was worried, had headaches and that her blood pressure was bothering her. Plaintiff testified that she did not see a psychiatrist, a psychologist or a physician after receiving Defendant's sole letter. Plaintiff testified that she did not go to the hospital after receiving Defendant's letter. Plaintiff testified that she has no medical bills occasioned by the Defendant's letter. Plaintiff admits in her Amended Complaint that her mental distress after receiving the Defendants' letter was *transient.* Indeed, in her Amended Complaint, the Plaintiff confesses that her mental distress abated after "...a period of time," at para. 30. Other than the letter sent on May 3, 2017, and received by the Plaintiff on May 8, 2017, Defendants had no further contact with the Plaintiff.

In this case, Plaintiff testified that she received the collection letter (dated May 3, 2017) from the Defendants on May 8, 2017. Within the span of a few hours, Plaintiff called her daughter who told the Plaintiff that the debt at issue was the daughter's debt. Again, within a few hours, the Plaintiff and her daughter contacted the Defendants via telephone. Until the telephone call with Plaintiff and her daughter on May 8, 2017, Defendants were not aware that Plaintiff and her daughter had the same first and last names. Defendants told the Plaintiff that the Columbus Checkcasher judgment was not against her, that there was no lien on her real estate and that she had nothing to fear from the Defendants.

6

Plaintiff's "mental distress", if any, was transitory in nature. Plaintiff's "mental distress" lasted only from the time she received the letter from the Defendants until shortly after the three-party call with Defendants on May 8, 2017. Plaintiff admits in her Amended Complaint that her mental distress abated after "...a period of time," Amended Complaint, at para. 30. Plaintiff had only transitory symptoms of mental distress, at best. *Miller v. Prompt Recovery Servs., Davis v. Creditors Interchange Receivables Mgmt., L.L.C., Costa v. Nat'l Action Fin. Servs., supra.*

Second, Plaintiff did not explain the circumstances of her alleged injury in reasonable detail. At no point during the trial did the Plaintiff explain why the letter from the Defendants affected her mental health, particularly as the Plaintiff *knew* that the debt to Columbus Checkcashers, Inc., was not her debt. Plaintiff's telephone conversation with her daughter, and later with the Defendants, confirmed that the underlying debt was not the Plaintiff's debt. Yet, even though the underlying debt was not the Plaintiff's debt and the Defendants advised the Plaintiff that she was not the judgment debtor, there was no lien on her real estate and that the Defendants would not foreclose on her property, the Plaintiff testified, unreasonably,in the Defendants' view, that she thought the Defendants could still foreclose on her property. At trial, the Plaintiff alleged that she was concerned and upset after receiving the letter from the Defendants, but failed to provide any explanation as to why she felt this way given that she did not owe any money to Columbus Checkcashers. At trial, Plaintiff relied upon conclusory statements to support her allegation of mental distress. As noted above, allegations that a plaintiff is "very upset" , "anguished", "humiliated", "embarrassed", "angry", without more, are insufficient to support an award of actual damages, *Costa v. Nat'l Action Fin. Servs., Wantz v. Experian Info Solutions, Cousins v. Trans Union Corp., supra.* There are no "facts underlying the case [that are] so inherently degrading that it would be reasonable to infer that a person would suffer emotional distress from the defendant's action," *Davis v. Creditors Interchange Receivable Mgmt, L.L.C.*

7

Third, Plaintiff produced no evidence of causation in this case, Fair Debt Collection, National Consumer Law Center, Inc., supra. As the Court knows, the issue of causal connection between an injury and a specific subsequent physical disability must ordinarily be established by competent medical testimony unless that causal relationship is apparent as a matter of common knowledge, *Darnell v. Eastman* (1970), 23 Ohio St.2d 13. When common knowledge supports a finding that certain acts will produce injury or pain, expert testimony is not required to show the causal relationship between the event and resulting injury, *Zalzal v. Scott* (1981), 1 Ohio App.3d 151. Similarly, a plaintiff's testimony regarding her own pain and suffering will justify only modest damages, without supporting medical testimony, *Turner v. Barrett* (1980), 68 Ohio App.2d 80. As the Court knows, Plaintiff did not see a physician or mental health provider, visit a hospital or produce any medical bills or expenses at trial. There was no testimony at trial regarding any physical symptoms experienced by the Plaintiff, other than she felt, without any expert testimony, that her blood pressure went up after receiving the letter from the Defendants. Again, there was no medical evidence presented regarding the Plaintiff's blood pressure, only her subjective assessment of her own medical condition, *Read v. Amana Collection Servs., supra.* Further, there was no testimony about how the Plaintiff's "mental distress" impacted her behavior post-letter.

Perhaps, most importantly, Plaintiff produced no "corroboration for [her] claim of emotional distress," *Doe v. Chao, supra.* At trial, Plaintiff did not call her husband, her daughter, a friend or a neighbor to corroborate her claim of mental distress. In *Doe* the Supreme Court held that Mr. Doe was not entitled to an award of "actual damages" under the Privacy Act because "Doe had not raised a triable issue of fact about actual damages, having submitted *no corroboration* for his claim of emotional distress, such as evidence of physical symptoms, medical treatment, loss of income, or impact on his behavior," *Id.,* at p. 181, emphasis added. Per the Supreme Court, "...the only indication of emotional affliction was Doe's conclusory allegations that he was "torn...all to pieces" and "greatly concerned and

8

worried" because of the disclosure of his social security number and its potentially "devastating" consequences," *Id.* Defendants respectfully submit that this case is precisely like *Doe* in that Plaintiff failed to produce any corroborating evidence of her "mental distress" at trial. Plaintiff's award of "actual damages" should be reversed on this basis, alone.

While the FDCPA is geared toward the "least sophisticated consumer," Defendants submit that Plaintiff is not the "least sophisticated consumer". Plaintiff testified that she worked as school bus driver for many years. She submitted her social security number to her employer. She paid taxes on her income to the City of Columbus, State of Ohio and the federal government. She prepared and filed City, State and federal income tax return forms for years. Plaintiff and her husband purchased the house on Fairgate and applied for a mortgage on same by providing their personal information and social security numbers to their lender. Plaintiff testified that she is 67 years old and likely drawing social security benefits from the federal government based upon her social security number. In this case, Plaintiff knew that the debt referenced in the letter was not hers and knew that she was not responsible for it. Plaintiff's subjective belief that Defendants could foreclose on her real estate after being told, explicitly, by O'Brien that the debt was not the Plaintiffs is simply not reasonable.

**Plaintiff is Not Entitled to an Award of Statutory Damages**

15 U.S.C. 1692k(a)(2)(A) provides:

(a) Except as otherwise provided by this section, any debt collector who fails to comply With any provision of this subchapter with respect to any person is liable to such Person in an amount equal to the sum...
   (2)(A) in the case of any action by an individual, such additional damages as the Court may allow, but not exceeding $1,000;...
(b) In determining the amount of liability in any action under subsection (a) of this section, the Court shall consider, among other relevant factors—
   (1) In any individual action under subsection (a)(2)(A) of this section, the frequency and Persistence of noncompliance by the debt collector, the nature of such noncompliance, and the extent fo which such noncompliance was intentional;...

9

15 U.S.C. 1692k(b)(1) requires courts to consider four factors in determining the amount of statutory liability in an individual action: (1) intent; (2) frequency; (3) persistence, and; (4) nature of the collector's compliance.

Defendants respectfully submit that they should not be liable for any statutory damages because the letter which was sent to the Plaintiff was the result of a bona fide error on the part of the Defendants and the Defendants testified to this error at trial. Defendants testified that they believed that the Plaintiff's daughter, also named Laura Morton, owned the real estate located on Fairgate. If there was a statutory violation in this case, which the Defendants deny, the facts of this case present a situation warranting a statutory award under the FDCPA, but certainly not the maximum statutory amount available under 15 U.S.C. 1692k(a) for the reasons which follow. When determining the amount of statutory damages for an individual action brought under the FDCPA, the Court must consider the four factors noted above, *Wright v. Finance Service of Norwalk, Inc.,* 22 F.3d 647, 650-51 (6th Cir., 1994), citing 15 U.S.C. 1692k(b)(1).

Defendants testified at trial that they were unaware of the existence of the Plaintiff until the three-party telephone call on May 8, 2017, and sent the collection letter to the Plaintiff at the Fairgate address because they had a good faith belief that the debtor (daughter) owned the real estate. Defendants' action was an accident. It was certainly not intentional. Second, there was only one (1) contact with the Plaintiff, to wit, the Defendants' letter of May 3, 2017, which the Plaintiff received on May 8, 2017. Third, there was no "persistence" on the part of the Defendants and Defendants never contacted the Plaintiff again after the three-party telephone call on May 8, 2017. Fourth, when the Defendants became aware that the Plaintiff and her daughter had the same first and last names and that the Plaintiff (mother) owned the home on Fairgate, Defendants never contacted the Plaintiff again.

In *Weiss v. Zwicker & Assocs., P.C.,* 664 F.Supp.2d 214, 218 (E.D.N.Y.) , the Court held that $500 in statutory damages was appropriate where the defendant committed one violation of the FDCPA and

10

there was no evidence that the violation was intentional. In *Gilden v. Platinum Holdings Grp., L.L.C.,* No.: 1-18-CV-343, 2019 U.S. Dist. LEXIS 23458, 2019 WL 590745, at *3 (S.D., Ohio, February 13, 2019), the Court awarded $500 in statutory damages under the FDCPA where the defendant made a single telephone call. In *Brown v. Halsted Fin. Servs., L.L.C.,* No.: 3:12-CV-308, 2013 U.S. Dist. LEXIS 26144, 2013 WL 693168, at *1-2 (S.D., Ohio, February 26, 2013) the Court held that, where a defendant's one call intentionally violated several provisions of the FDCPA, an award of $500 in statutory damages for Defendant's violation of 15 U.S.C. 1692e(5), was appropriate. In Fair Debt Collection, National Consumer Law Center, 6th Ed., 2008, Section 6.4.3.3 [Factors Reducing Statutory Damages] the National Consumer Law Center provides the following criteria for reduction of an FDCPA statutory damage award: (1) a single violation; (2) the technical nature of the violation; (3) cessation of the violation when first brought to the attention of the collector; (4) the collector seeking legal advice; (5) lack of persistent, frequent violations, and; (6) the lack of consumer injury. In the present case, Defendants deny any statutory liability to Plaintiff, but recommend that the statutory damages not exceed $500 if the Court finds a violation.

**The Audio Recording of O'Brien's Message to Kleiman Should not have been Admitted.**

Three (3) days prior to the start of the trial, the Plaintiffs claim that they were provided an audio tape of Defendant, Kevin O'Brien, leaving a message for Ross Kleiman, the in-house attorney for PLS Financial Services, Inc., of Chicago, Illinois. Mr. Reichenbach explained to the Court that the audio recording was initially provided by PLS Financial Services, Inc., to Jonathan Corwin, Esq., and/or Beth Miller, Esq., who are defending two (2) PLS entities in the Franklin County Court of Common Pleas, Case No.: 18 CV 5430, styled *Kevin O'Brien & Associates Co., L.P.A., v. PLS Financial Solutions of Ohio, Inc., et al.,* and assigned to the Honorable Judge Mcintosh. Mr. Reichenbach explained to the Court that he had only become aware of this audio recording on/about Thursday, December 9, 2021, which the

11

Defendants believe is inaccurate. Defendants observed Ms. Miller in the courtroom toward the beginning of the trial. This audio recording was *never produced* during discovery in this FDCPA case. The Defendants objected to the use of this audio recording because it was never produced during discovery and Defendants were prejudiced by the introduction of this audio recording at trial.

Kevin O'Brien's lawsuit against the PLS entities has been pending in the Franklin County Court of Common Pleas since June 25, 2018. The Common Pleas Court case is set for trial in June, 2022. In that case, O'Brien requested all communications between O'Brien and PLS years ago. The audio recording which this Court admitted in the FDCPA case was *never produced* during discovery in the Common Pleas Court case but it is now clear, based upon the comments of Mr. Reichenbach, that either Mr. Corwin and/or Ms. Miller, or both, have had this audio recording for some time but never produced it during discovery. This is, in fact, the second communication between O'Brien and the PLS entities which has not been produced by PLS's attorneys (the other being a phone message left by O'Brien for Mike Filla).

Defendants were prejudiced by the Court's decision to admit the audio recording. The purpose of the audio recording was to demonstrate that O'Brien inappropriately continued to work for Columbus Checkcashers, Inc., after a representative of PLS Financial Services, Inc., allegedly told O'Brien to stop work on the Columbus Checkcasher cases and that O'Brien's work on the instant case was unauthorized. This is not the case.

O'Brien testified at trial that he believes that he may have received the two (2) e-mails from Mike Filla, the Collection Manager for PLS Financial, Inc. (or that Filla called O'Brien and O'Brien tried to call him back), but that O'Brien never read the e-mails. O'Brien does not know Filla and never spoke with him. In the fall of 2012, O'Brien was receiving approximately 100-150 e-mails per day and had staff members assisting him in answering these e-mails. O'Brien testified that he believes a member of his staff conveyed the substance of the e-mail from Mr. Filla to O'Brien and O'Brien dictated a response. Fillas' e-mails to O'Brien are premised upon the erroneous assumption that Columbus Checkcashers,

Inc., did not have the original loan agreements and checks securing the loans and that it would be dangerous going forward with collections without the supporting loan documentation. *Neither Filla nor anyone else at PLS ever asked O'Brien who had the original loan documents and checks.* The fact is, O'Brien had all of Columbus Checkcashers' original loan agreements and checks securing said loans.

O'Brien testified that he communicated with PLS Counsel, Ross Kleiman, on October 19, 2012, two weeks after Filla's e-mails,  and reached a tentative agreement with Kleiman that O'Brien would continue to collect Columbus Checkcashers' loans/checks and that O'Brien would continue to remit collection monies to PLS for the next six (6) months (November, 2012 through April, 2013).  After that time, O'Brien would apply Columbus Checkcashers' monthly remit to pay down the company's court costs, which were substantial.  Kleiman did not object to this arrangement and told O'Brien that he would approach management about paying O'Brien's court costs and out-of-pocket expenses that O'Brien incurred to advance Columbus Checkcashers' cases.  O'Brien called Kleiman on multiple occasions between November, 2012, and April, 2013.  Kleiman never took any of O'Brien's calls and apparently left PLS without resolving the issue of O'Brien's out-of-pocket expenses.  O'Brien was never fired by PLS until November, 2017, at the earliest.  O'Brien's testimony in this regard was uncontradicted.  Even Ms. Madsen of PLS admitted that O'Brien had a telephone conversation With Kleiman after the e-mails from Filla.  Yet, it is clear from the jury's verdict, that the jury did not believe O'Brien.

Defendants have documents, specifically, six (6) months' worth of checks and disbursement statements dating from  November, 2012, through April, 2013, which Defendants did not produce during discovery, did not mark as exhibits and did not introduce as evidence during the trial because Defendants were not aware of the audio recording referenced above.  Copies of these checks and monthly disbursement forms are attached, hereto, for the Court's consideration, and were referenced during O'Brien's testimony at trial.  The Defendants were prejudiced by the Court's decision to admit the

audio recording and Defendants are certain that the jury did not believe that O'Brien and Kleiman tentatively resolved their issues and that the Defendants paid PLS for six (6) month after the two (2) e-mails from Filla in early October, 2012. PLS maintains that it told Defendants to "stop work" on Columbus Checkcashers' cases in October, 2012, but continued to cash Defendants' checks through April, 2013. Where did PLS believe this money was coming from? Further, to date, PLS has *never resolved* the Defendants' claim for reimbursement of its out-of-pocket expenses, such as court costs. These expenses amount to over $300,000.00. PLS is required by law to reimburse Defendants for their out-of-pocket expenses (court costs, postage, paper, etc.) in accordance with Ohio law, *Fox & Associates, L.P.A. v. Purdon* (1989), 44 Ohio St.3d 69 and *Reid, Johnson, Downes, Andrachik & Webster v. Lansberry* (1994), 68 Ohio St.3d 570.

For the reasons set forth hereinabove, Defendants respectfully urge the Court to sustain the Defendants' Motion for Judgment Notwithstanding the Verdict.

Respectfully submitted

/s/ Jeffrey A. Catri

Jeffrey A. Catri (0019028)
**JEFFREY A. CATRI CO., L.L.C.**
995 South High St.
Columbus, OH 43206
614/224-3080
614/224-4870 Fax
jcatri@columbus.rr.com
Counsel for Defendants

14

## CERTIFICATE OF SERVICE

This is to certify that a true and accurate copy of the foregoing Motion for Judgment on the Pleadings was served this the 31st day of December, 2021, via the Clerk's electronic filing system and also via e-mail.

Respectfully submitted,

/s/ Jeffrey A. Catri

Jeffrey A. Catri (0019028)

Cc:

Gregory S. Reichenbach, Esq.
P.O. Box 711
Perrysburg, OH 43553-0711
greg@reichenbachlaw.com
Counsel for Plaintiff

Edward A. Icove, Esq.
Icove Legal Group, Ltd.
Terminal Tower, #3220
50 Public Square
Cleveland, OH 44113
ed@icovelegal.com
Counsel for Plaintiff

**CCC/CLVCC**

**October 2012 Client Disbursement**

| Name | ID # | Face of Check | Paid This Month | Bal Due | Notes |
|------|------|---------------|-----------------|---------|-------|
| Ampadu, David | | $ 402.50 | $ 150.00 | $ 20.00 | $132 cc recovered |
| Asante, Yaw | | $ 575.00 | $ 142.00 | $ 68.00 | |
| Ashton, Robert | | $ 230.00 | $ 75.00 | $ - | PIF |
| Burgess Jr., Roy | | $ 575.00 | $ 327.00 | $ 139.00 | |
| Davis, Linda | | $ 706.00 | $ 17.00 | $ 249.70 | |
| English, Carl | | $ 230.00 | $ 20.00 | $ - | PIF |
| Evans, Matilda | | $ 287.50 | $ 38.20 | $ - | PIF |
| Green, Suzanne | | $ 172.50 | $ 172.50 | $ - | PIF |
| Hancock, Patricia | | $ 460.00 | $ 53.00 | $ 271.00 | |
| Jefferson, Donna | | $ 575.00 | $ 10.00 | $ 468.00 | |
| Jones, Sharell | | $ 575.00 | $ 11.00 | $ 7.65 | |
| Lewis, William | | $ 287.50 | $ 70.00 | $ 77.50 | |
| Lokey, Michael | | $ 460.00 | $ 105.00 | $ 208.00 | |
| Mack, Regina | | $ 402.50 | $ 15.00 | $ 387.50 | $78 cc recovered |
| McIntosh, Ondina | | $ 115.00 | $ 62.00 | $ 53.00 | $132 cc recovered |
| Mirando, Brenda | | $ 517.50 | $ 17.00 | $ 290.50 | |
| Moore, Nina | | $ 345.00 | $ 70.00 | $ 275.00 | |
| Moore, Shannon | | $ 172.50 | $ 70.00 | $ 32.50 | |
| Murphy, Vance | 33279 | $ 1,198.00 | $ 35.00 | $ 143.70 | |
| Music, Shanda | | $ 345.00 | $ 166.00 | $ 137.00 | $85 cc recovered |
| Reynolds, Tekea | | $ 460.00 | $ 390.00 | $ - | PIF |
| Rodgers, William | | $ 460.00 | $ 35.00 | $ 250.00 | |
| Sharp, Larry | | $ 172.50 | $ 172.50 | $ - | PIF |
| Sharp, Larry | | $ 172.50 | $ 140.00 | $ 32.50 | $171 cc recovered |
| Slone, Ronald | | $ 115.00 | $ 35.00 | $ 45.00 | |
| Starett, Dawnetta | | $ 172.50 | $ 35.00 | $ 102.50 | |
| Sullivan, Jayme | 35549 | $ 986.00 | $ 73.00 | $ 311.36 | |
| Tornlinson, Angel | | $ 287.50 | $ 215.00 | $ 72.50 | $85 cc recovered |
| Vernon, Zina | | $ 287.50 | $ 215.94 | $ - | PIF |
| West, Bernice | | $ 230.00 | $ 12.00 | $ 29.00 | |
| | | | $ 2,949.14 | | |



11730

KEVIN O'BRIEN & ASSOCIATES CO., L.P.A.
IOLTA ACCOUNT
993 SOUTH HIGH ST.
COLUMBUS, OH 43206
PH. (614) 445-8757

FIFTH THIRD BANK
25-216-440

DATE 11/1/12
NUMBER 11730
AMOUNT $2,949.14

PAY *** Two Thousand Nine Hundred Forty Nine                    14*/100

TO THE
ORDER OF    Columbus Check Cashers
            PO Box 374
            Randolph, MA 02368

AUTHORIZED SIGNATURE

Posting Date 2012 Nov 07 Posting Check Number
11730 Amount $2,949.14

For Deposit Only
PLS US Bank Ohio Check Cashers
CC354 Columbus CC2



Posting Date 2012 Nov 07 Posting Check Number
11730 Amount $2,949.14

**CCC/CLVCC**

October 2012 Client Disbursement

| Name | ID # | Face of Check | Paid This Month | Bal Due | Notes |
|------|------|---------------|-----------------|---------|-------|
| Foreman, Relivia | | $ 115.00 | $ 115.00 | $ - | PIF |
| Gibson-Gray, Gail | | $ 172.50 | $ 112.50 | $ - | PIF |
| | | $ | 227.50 | | |



Posting Date 2012 Nov 07 Posting Check Number
11731 Amount $227.50

For Deposit Only
PLS US Bank Ohio Check Cashers
CC354 Columbus CC2

Posting Date  2012 Nov 07 Posting Check Number
11731 Amount  $227.50

**CCC/CLVCC**

November 2012 Client Disbursement

| Name | ID # | Face of Check | Paid This Month | Bal Due | Notes |
|---|---|---|---|---|---|
| Ampadu, David | | $ 402.50 | $ 20.00 | $ - | PIF |
| Asante, Yaw | | $ 575.00 | $ 68.00 | $ - | PIF |
| Burgess Jr., Roy | | $ 575.00 | $ 139.00 | $ - | PIF |
| Conteh, Ramatu | | $ 230.00 | $ 51.33 | $ - | PIF |
| Davis, Linda | | $ 706.00 | $ 17.00 | $ 232.70 | |
| Gripper (Moore), Anitra | | $ 460.00 | $ 17.00 | $ 104.00 | |
| Jefferson, Donna | | $ 575.00 | $ 10.00 | $ 458.00 | |
| Kalala, Ntole | | $ 287.50 | $ 157.00 | $ 24.50 | |
| Kamara, Sekou | | $ 402.50 | $ 70.00 | $ 17.50 | |
| Lewis, William | | $ 287.50 | $ 44.00 | $ 33.50 | |
| Lokey, Michael | | $ 460.00 | $ 208.00 | $ - | PIF |
| Mack, Regina | | $ 402.50 | $ 70.00 | $ 317.50 | |
| Martin, Frederick | | $ 460.00 | $ 70.00 | $ 70.00 | |
| McGee, Clement | | $ 517.50 | $ 35.00 | $ 482.50 | |
| Mcintosh, Ondina | | $ 115.00 | $ 53.00 | $ - | PIF |
| Mirando, Brenda | | $ 517.50 | $ 17.00 | $ 273.50 | |
| Moore, Nina | | $ 345.00 | $ 35.00 | $ 240.00 | |
| Moore, Shannon | | $ 172.50 | $ 32.50 | $ - | PIF |
| Music, Shanda | | $ 345.00 | $ 137.00 | $ - | PIF |
| Pickens, Jeriene | | $ 402.50 | $ 112.00 | $ 20.50 | |
| Radcliff, Jerry | 33279 | $ 1,198.00 | $ 35.00 | $ 108.70 | |
| Rodgers, William | | $ 460.00 | $ 35.00 | $ 215.00 | |
| Sharp, Larry | | $ 172.50 | $ 32.50 | $ - | PIF |
| Slone, Ronald | | $ 115.00 | $ 35.00 | $ 10.00 | |
| Starett, Dawnetta | | $ 172.50 | $ 35.00 | $ 67.50 | |
| Sullivan, Jayme | 35549 | $ 986.00 | $ 35.00 | $ 276.36 | |
| Tomlinson, Angel | | $ 287.50 | $ 72.50 | $ - | PIF |
| West, Bernice | | $ 230.00 | $ 11.00 | $ 18.00 | |
| | | | | | |
| | | | $ 1,653.83 | | |



Posting Date 2012 Dec 11 Posting Check Number
11794 Amount $1,653.83



Posting Date  2012 Dec 11 Posting Check Number
11794 Amount  $1,653.83

CCC/CLVCC

November 2012 Client Disbursement

| Name | ID # | Face of Check | Paid This Month | Bal Due | Notes |
|------|------|---------------|-----------------|---------|-------|
| Deming, Deborah | | $ 575.00 | $ 35.00 | $ 365.00 | |
| | | $ | 35.00 | | |



Posting Date 2012 Dec 11 Posting Check Number
11795 Amount $35.00

Posting Date 2012 Dec 11 Posting Check Number
11795 Amount $35.00

**CCC/CLVCC**

**December 2012 Client Disbursement**

| Name | ID # | Face of Check | Paid This Month | Bal Due | Notes |
|------|------|--------------|-----------------|---------|-------|
| C1 Automotive | 37124 | $ 450.05 | $ 230.00 | $ - | PIF |
| Carr, Louise | | $ 115.00 | $ 70.00 | $ 45.00 | |
| Collins, Darrell | | $ 230.00 | $ 35.00 | $ 95.00 | $72 cc recovered |
| Dauberman, Kristin | | $ 115.00 | $ 115.00 | $ - | PIF |
| Ferrer, Jennifer | | $ 517.50 | $ 287.50 | $ - | PIF |
| Hancock, Patricia | | $ 460.00 | $ 17.00 | $ 254.00 | |
| Jefferson, Donna | | $ 575.00 | $ 10.00 | $ 448.00 | |
| Lewis, William | | $ 287.50 | $ 33.50 | $ - | PIF |
| Mack, Regina | | $ 402.50 | $ 70.00 | $ 247.50 | |
| McGee, Clement | | $ 517.50 | $ 35.00 | $ 447.50 | |
| Mcqueen, Felise | | $ 345.00 | $ 28.00 | $ 73.00 | |
| Mirando, Brenda | | $ 517.50 | $ 17.00 | $ 256.50 | |
| Moore, Nina | | $ 345.00 | $ 70.00 | $ 170.00 | |
| Murphy, Vance | 33279 | $ 1,198.00 | $ 35.00 | $ 73.70 | |
| Paintz By Sam | 35620 | $ 120.00 | $ 80.00 | $ - | PIF |
| Pickens, Jeriene | | $ 402.50 | $ 12.00 | $ 8.50 | |
| Rodgers, William | | $ 460.00 | $ 35.00 | $ 180.00 | |
| Slone, Ronald | | $ 115.00 | $ 10.00 | $ - | PIF |
| Starett, Dawnetta | | $ 172.50 | $ 35.00 | $ 32.50 | |
| Steward, James | | $ 230.00 | $ 50.00 | $ 180.00 | |
| Sullivan, Jayme | 35549 | $ 986.00 | $ 35.00 | $ 241.36 | |
| Thompson, Amber Maree | | $ 172.50 | $ 102.50 | $ - | PIF |
| West, Bernice | | $ 230.00 | $ 12.00 | $ 6.00 | |
| | | | | | |
| | | $ 1,424.50 | | | |



Posting Date 2013 Jan 07 Posting Check Number
11851 Amount $1,424.50



Posting Date  2013 Jan 07 Posting Check Number
11851 Amount  $1,424.50

CCC/CLVCC

December 2012 Client Disbursement

| Name | ID # | Face of Check | | Paid This Month | | Bal Due | | Notes |
|------|------|---------------|---|-----------------|---|---------|---|-------|
| Academy Communications | 37023 | $ | 697.12 | $ | 464.77 | $ | - | PIF |
| Derning, Deborah | | $ | 575.00 | $ | 35.00 | $ | 330.00 | |
| | | | | $ | 499.77 | | | |



Posting Date 2013 Jan 07 Posting Check Number
11852 Amount $499.77



Posting Date 2013 Jan 07 Posting Check Number
11852 Amount $499.77

**CCC/CLVCC**

**January 2013 Client Disbursement**

| Name | ID # | Face of Check | Paid This Month | Bal Due | Notes |
|------|------|--------------:|----------------:|--------:|-------|
| Carr, Louise | | $ 115.00 | $ 45.00 | $ - | PIF |
| Collins, Darrell | | $ 230.00 | $ 88.00 | $ 7.00 | |
| Davenport, Valerie | | $ 287.50 | $ 287.50 | $ - | PIF |
| Davis, Linda | | $ 706.00 | $ 17.00 | $ 215.70 | |
| Fox, Del | | $ 172.50 | $ 35.00 | $ 137.50 | |
| Gripper (Moore), Anitra | | $ 460.00 | $ 17.00 | $ 87.00 | |
| Hancock, Patricia | | $ 460.00 | $ 17.00 | $ 237.00 | |
| Jefferson, Donna | | $ 575.00 | $ 10.00 | $ 438.00 | |
| Jones, Sharell | | $ 575.00 | $ 7.65 | $ - | PIF |
| Kalala, Ntole | | $ 287.50 | $ 24.50 | $ - | PIF |
| Kamara, Sekou | | $ 402.50 | $ 17.50 | $ - | PIF |
| Mack, Regina | | $ 402.50 | $ 70.00 | $ 177.50 | |
| Martin, Frederick | | $ 460.00 | $ 40.00 | $ 30.00 | |
| McGee, Clement | | $ 517.50 | $ 35.00 | $ 412.50 | |
| McQueen, Felise | | $ 345.00 | $ 56.00 | $ 17.00 | |
| Mirando, Brenda | | $ 517.50 | $ 17.00 | $ 239.50 | |
| Moore, Mary | 33437 | $ 420.00 | $ 280.00 | $ - | PIF |
| Pickens, Jeriene | | $ 402.50 | $ 8.50 | $ - | PIF |
| Radcliff, Jerry | 33279 | $ 1,198.00 | $ 73.70 | $ - | PIF |
| Rodgers, William | | $ 460.00 | $ 35.00 | $ 145.00 | |
| Southworth, Christine | | $ 230.00 | $ 48.00 | $ 182.00 | |
| Steward, James | | $ 230.00 | $ 150.00 | $ 30.00 | |
| Sullivan, Jayme | 36549 | $ 986.00 | $ 35.00 | $ 206.36 | |
| West, Bernice | | $ 230.00 | $ 6.00 | $ - | PIF |
| | | | $ 1,420.35 | | |



11908

**KEVIN O'BRIEN & ASSOCIATES CO., L.P.A.**
IOLTA ACCOUNT
995 SOUTH HIGH ST.
COLUMBUS, OH 43206
PH. (614) 445-6757

FIFTH THIRD BANK
25-216-440

| DATE | NUMBER | AMOUNT |
|------|--------|--------|
| 2/4/13 | 11908 | $1,420.35 |

PAY  \*\*\* One Thousand Four Hundred Twenty \*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\* 35/100

TO THE ORDER OF  Columbus Check Cashers

AUTHORIZED SIGNATURE

Posting Date 2013 Feb 06 Posting Check Number
11908 Amount $1,420.35

02062013   US Bank, OH >53220006<

For Deposit Only
PLS US Bank Ohio Check Cashers
CC354 Columbus CC2

Posting Date  2013 Feb 06 Posting Check Number
11908 Amount  $1,420.35

**CCC/CLVCC**

January 2013 Cleveland Client Disbursement



| Name | Face of Check | Paid This Month | Bal Due | Notes |
|---|---|---|---|---|
| Jackson, Pamela | $ 402.50 | $ 17.00 | $ 385.50 | |
| | | $ 17.00 | | |



Posting Date 2013 Feb 06 Posting Check Number
11909 Amount $17.00

020062013 US Bank, OH >532200006<

For Deposit Only
PLS US Bank Ohio Check Cashers
CC354 Columbus CC2

Posting Date 2013 Feb 06 Posting Check Number
11909 Amount $17.00

CCC/CLVCC

**February 2013 Client Disbursement**

| Name | ID # | Face of Check | Paid This Month | Bal Due | Notes |
|------|------|--------------:|----------------:|--------:|-------|
| Boden, Kari | | $ 115.00 | $ 32.00 | $ 83.00 | $157 cc recovered |
| Bynum, Beverly | | $ 575.00 | $ 35.00 | $ 30.00 | |
| Collins, Darrell | | $ 230.00 | $ 7.00 | $ - | PIF |
| Davis, David | | $ 230.00 | $ 230.00 | $ - | PIF |
| Davis, Linda | | $ 706.00 | $ 17.00 | 198.70 | |
| Fentress, Cherrita | | $ 402.50 | $ 402.50 | $ - | PIF |
| Fox, Del | | $ 172.50 | $ 35.00 | $ 102.50 | |
| Jefferson, Donna | | $ 575.00 | $ 10.00 | $ 428.00 | |
| Mack, Regina | | $ 402.50 | $ 70.00 | $ 107.50 | |
| Martin, Fredrick | | $ 460.00 | $ 30.00 | $ - | PIF |
| Michae, Lena | | $ 115.00 | $ 37.00 | $ 78.00 | $72 cc recovred |
| Mirando, Brenda | | $ 517.50 | $ 17.00 | $ 222.50 | |
| Newton, Terrie | | $ 287.50 | $ 25.00 | $ 262.50 | |
| Reeder, Marlo | | $ 172.50 | $ 70.00 | $ 102.50 | |
| Rodgers, William | | $ 460.00 | $ 35.00 | $ 110.00 | |
| Southworth, Christine | | $ 230.00 | $ 35.00 | $ 147.00 | |
| Starett, Dawnetta | | $ 172.50 | $ 32.50 | $ - | PIF |
| Steward, James | | $ 230.00 | $ 30.00 | $ - | PIF |
| Sullivan, Jayme | 35549 | $ 986.00 | $ 35.00 | 171.36 | |
| Thomas, Tamu | | $ 172.50 | $ 53.00 | $ 119.50 | |
| Williams, Albert | | $ 575.00 | $ 102.00 | 473.00 | $157 cc recovered |
| Wise, Kevin | | $ 575.00 | $ 575.00 | $ - | PIF |
| | | | $ 1,915.00 | | |



Posting Date 2013 Mar 11 Posting Check Number
11965 Amount $1,915.00



Posting Date 2013 Mar 11 Posting Check Number
11965 Amount $1,915.00

CCC/CLVCC

**February 2013 Client Disbursement**

| Name | ID # | Face of Check | Paid This Month | Bal Due | Notes |
|------|------|---------------|-----------------|---------|-------|
| Cleveland Metropolitan School District | 37249 | $ 269.00 | $ 179.35 | $ - | PIF |
| Cleveland Metropolitan School District | 36939 | $ 581.97 | $ 388.00 | $ - | PIF |
| Cleveland Metropolitan School District | 33242 | $ 533.38 | $ 355.60 | $ - | PIF |
| Deming, Deborah | | $ 575.00 | $ 105.00 | $ 225.00 | |
| Jackson, Pamela | | $ 402.50 | $ 35.00 | $ 350.50 | |
| | | | | | |



Posting Date 2013 Mar 11 Posting Check Number
11966 Amount $1,062.95



Posting Date  2013 Mar 11 Posting Check Number
11966 Amount  $1,062.95

CCC/CLVCC

**March 2013 Client Disbursement**

| Name | ID # | Face of Check | Paid This Month | Bal Due | Notes |
|---|---|---|---|---|---|
| All About You Support Services | 35734 | $ 6,300.00 | $ 1,900.21 | $ - | PIF |
| Boden, Kari | | $ 115.00 | $ 83.00 | $ - | PIF |
| Davis, Linda | | $ 706.00 | $ 17.00 | $ 181.70 | |
| Fleming, Ralph | | $ 575.00 | $ 35.00 | $ 540.00 | |
| Gripper (Moore), Anitra | | $ 460.00 | $ 17.00 | $ 70.00 | |
| Jefferson, Donna | | $ 575.00 | $ 10.00 | $ 418.00 | |
| Mack, Regina | | $ 402.50 | $ 70.00 | $ 37.50 | |
| Mcqueen, Felise | | $ 345.00 | $ 17.00 | $ - | PIF |
| Mirando, Brenda | | $ 517.50 | $ 17.00 | $ 205.50 | |
| Newton, Terrie | | $ 287.50 | $ 25.00 | $ 237.50 | |
| Reeder, Marlo | | $ 172.50 | $ 70.00 | $ 32.50 | |
| Rodgers, William | | $ 460.00 | $ 35.00 | $ 75.00 | |
| Rogers, Dominique | 37211 | $ 144.65 | $ 96.42 | $ - | PIF |
| Rogers, Dominique | 37544 | $ 221.88 | $ 147.93 | $ - | PIF |
| Savannah, Alexander | | $ 345.00 | $ 140.00 | $ 115.00 | |
| Sullivan, Jayme | 35549 | $ 986.00 | $ 35.00 | $ 136.36 | |
| Thomas, Tamu | | $ 172.50 | $ 70.00 | $ 49.50 | |
| Thrweatt, Darius | | $ 345.00 | $ 70.00 | $ 275.00 | |
| Williams, Albert | | $ 575.00 | $ 436.00 | $ 37.00 | |
| | | | | | |
| | | | $ 3,291.56 | | |



12057

**KEVIN O'BRIEN & ASSOCIATES CO., L.P.A.**
IOLTA ACCOUNT
995 SOUTH HIGH ST.
COLUMBUS, OH 43206
PH. (614) 224-3080

FIFTH THIRD BANK
25-216-440

| DATE | NUMBER | AMOUNT |
|------|--------|--------|
| 4/3/13 | 12057 | $3,291.56 |

PAY

*** Three Thousand Two Hundred Ninety One ************************** 56/100

TO THE
ORDER OF

Columbus Check Cashers
PO Box 374
Randolph, MA 02368

AUTHORIZED SIGNATURE

Posting Date 2013 Apr 08 Posting Check Number
12057 Amount $3,291.56



For Deposit Only
PLS US Bank Oio Check Cashers
CC354 Columbus CC2

Posting Date 2013 Apr 08 Posting Check Number
12057 Amount $3,291.56

**CCC/CLVCC**

March 2013 Client Disbursement

| Name | ID # | Face of Check | Paid This Month | Bal Due | Notes |
|------|------|---------------|-----------------|---------|-------|
| Ferrell, Mary | | $ 460.00 | $ 123.00 | $ - | PIF |
| Jackson, Pamela | | $ 402.50 | $ 17.00 | $ 333.50 | |
| | | | | | |
| | | $ | 140.00 | | |



Posting Date 2013 Apr 08 Posting Check Number
12017 Amount $140.00



Posting Date  2013 Apr 08 Posting Check Number
12017 Amount  $140.00