IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF OHIO
EASTERN DIVISION

Laura B. Morton, :

        Plaintiff, :    Case No.: 18-CV-445

v. :    Judge: Hon. James L. Graham
                                           Mag. J. Hon. Elizabeth Preston Deavers

Kevin John O'Brien, et al., :

        Defendants. :

## DEFENDANTS' SUPPLEMENTAL
## FED.R.CIV.P. 50(b) MOTION

Defendants supplement their Fed.R.Civ.P. 50(b) Motion filed on December 31, 2021, and invite the Court's attention to the cases set forth below.

To sue in federal court, a plaintiff must have standing under Article III of the Constitution, which "limits the judicial power to resolving actual "Cases" and "Controversies", *Buchholz v. Meyer NjusTanick, P.A.*, 946 F.3d 855, 860 (6th Cir., 2020). The oft-repeated constitutional standing test has three elements: "[t]he plaintiff must have (1) suffered an injury in fact, (2) that is fairly traceable to the challenged conduct of the defendant, and (3) that is likely to be redressed by a favorable judicial decision, " *Spokeo, Inc. v. Robins,* 136 S.Ct. 1540, 1547 (2016).

To have standing, a plaintiff must have suffered an injury in fact—"an invasion of a legally protected interest which is (a) concrete and particularized and (b) actual or imminent, not conjectural or hypothetical," *Lujan v. Defs. Of Wildlife*, 504 U.S. 555, 650 (1992). In her Amended Complaint and testimony at trial, Ms. Morton claims that she was "worried", "pressured", "frustrated", "aggravated" and felt "helpless" after receiving a letter from Defendants, which was intended for her daughter. None of the "emotional injuries" claimed by Ms. Morton satisfy standing's concreteness requirement as noted below.

1

Morton's Amended Complaint and testimony allege actual and statutory violations that led to mental distress issues. The FDCPA creates a cause of action against collectors who violate its provisions. "One might think that a clear statutory directive to open the doors to court would be enough for standing. Not so. Because standing is a constitutional requirement, the fact that the statute purports to create a cause of action does not in isolation create standing. A plaintiff asserting a procedural claim (like an FDCPA) violation cannot bring a claim unless she has suffered a concrete injury of some kind," *Garland v. Orlans, P.C.* , 999 F.3d 432, 436 (6th Cir., 2021).

Under *Spokeo, supra,* Morton has standing if her Amended Complaint sufficiently alleges that (1) O'Brien's alleged FDCPA violations caused her concrete harm, or (2) the violations in and of themselves create standing because Congress "conferred the procedural right to protect a plaintiff's concrete interest and the procedural violation presents a material risk of real harm to that concrete interest," *Garland v. Orlans,supra,* citing *Macy v. GC Servs. Ltd. P'ship*, 897 F.3rd 747, 756 (6$^{th}$Cir., 2018). Morton's Amended Complaint does not allege that the alleged violations "present a material risk of real harm to [her] concrete interest." *Id.*As the Court noted in *Macy,* "a risk of harm analysis"is unnecessary when "no risk of harm [is] alleged", at 761.

So, the question that must be resolved is whether Morton has sufficiently plead that the alleged statutory violations caused her individualized concrete harm. Ms. Morton's Amended Complaint comes up short. Morton's alleged injuries are not concrete enough to support standing. In her Amended Complaint, Morton complains only that she was "concerned" [para. 26] and that she suffered "...substantial frustration, stress, aggravation, worry and helplessness," [para. 35]. None of these "injuries" caused Ms. Morton concrete harm.

In *Buckholz*, Gustav Buchholz received two letters from a law firm (on firm letterhead and signed by an attorney), that said that a bank had retained the firm to collect two debts, *supra*, at 859-860. The letters did not threaten legal action, *supra*, at 860. Buckholz sued, alleging that the firm processed too

2

many collection letters to have meaningfully reviewed the claims against him and "the letters made him feel anxious and fear that [the firm] would sue him if he did not promptly pay," *supra*, at 859. Buckholz did not dispute the debts.

In *Buckholz*, the Sixth Circuit held that Buckholz lacked standing. The Court made several important findings. First, the Court expressed doubt that a "bare assertion of anxiety" *could ever qualify* as a concrete injury, *supra*, emphasis added, at 863. An unadorned assertion of anxiety seemed unlike any cognizable common-law harm, and the Court was "reluctant to find that" the Supreme Court's conclusion "that an allegation of a "bare procedural violation" cannot satisfy Article III" could "be undone by the simple addition of one word to a pleading," *supra*, at p. 865.; *see, also, Thomas v. Toms King (Ohio II), L.L.C.*, 997 F.3d 629 (6th Cir., 2019), "after *Spokeo* we know there is no such thing as an "anything-hurts-so-long-as-Congress says-it-hurts theory of Article III injury," quoting *Huff v. TeleCheckServs., Inc.*, 923 F.3d at 458, 463 (6th Cir., 2019). Second, the Sixth Circuit determined that Buckholz's injury was not an injury in fact because fear of future harm is cognizable only when the feared harm is "certainly impending," *Buckholz*, 946 F.3d at 865, quoting *Clapper v. Amnesty Int'l, U.S.A.*, 568 U.S. 398, 410. The Sixth Circuit found that Buckholz's injury wasn't sufficient to confer jurisdiction because he only alleged fear that the law firm might sue him at some point in the future if he did not pay, *Buckholz, supra*. In his complaint, Buckholz alleged something (foreclosure) that might or might not happen, *Buckholz, supra*, at 865. Third, the Sixth Circuit went through the *Spokeo* intangible-injury framework to reach the same conclusion—that the letter from the law firm did not cause Garland a concrete intangible harm, *Garland, supra,* at 438. In short, the complaint did not allege the statutory violation should be enough given a real risk to a congressionally contemplated harm, *Id.*

In this case, Ms. Morton has made only conclusory statements regarding the alleged harm she suffered at the hands of the Defendants—she was "concerned", she felt "substantial frustration, stress, aggravation, worry and helplessness," Amended Complaint, at paras. 26, 35. Nowhere in Ms. Morton's

3

Amended Complaint does she allege that her "emotional distress" was severe, *Garland, supra*, at 439. As described in *Buckholz*, the closest common-law analogues about "psychological injuries" emphasize the "extreme" or "outrageous" nature of the underlying conduct causing the harm, at 864. And that severely curtails the harms cognizable at common law by defining the harm narrowly. While "[a] great deal of conduct may cause emotional harm...the requisite conduct for [these potential common-law analogues]—extreme and outrageous-describes a very small slice of human behavior," *Id.*, quoting Restatement (Third) of Torts: Physical and Emotional Harm, Section 46, Comment a (Am. L. Inst., 2012). A "bare procedural violation" does not fit on that small slice, *Id*, at 865. Moreover, a general allegation of emotional harm like anxiety or distress falls "short of cognizable injury as a matter of general tort law," *Id.*, at 864, because "liability [for emotional harm] arises "*only* where it is extreme," *Id.*, quoting Restatement (Second) of Torts, Section 46, Comment a, emphasis added. A bare assertion of "emotional distress" says nothing about severity. Someone who feels slightly nervous has not suffered the type of severe emotional harm cognizable at common law. Where that so, "everyone would have standing to litigate about everything," *Garland*, at 440, citing *Brunett v. Convergent Outsourcing, Inc.*, 982 F.3d 1067, 1068 (6[th]Cir., 2020).

None of the emotional distress feelings allegedly suffered by Ms. Morton constitutes an actual or concrete injury given the foregoing cases. As noted in Defendants' earlier 50(b) motion, Ms. Morton testified that she never saw a psychiatrist, a psychologist or a doctor for her "emotional distress". Ms. Morton testified that she never went to the hospital. She has no medical bills. No medical professional testified on her behalf and proffered any medical bills. Importantly, she never had another witness *corroborate* her "emotional distress" which is required by *Doe v. Choa*, 540 U.S. 614, 617 (2004). No one (other than Ms. Morton) testified at trial that Ms. Morton suffered or even complained of "frustration, stress, aggravation, worry or helplessness. This lack of corroboration, alone, is reason to dismiss the Plaintiff's Amended Complaint for lack of jurisdiction, *Id.*

4

Further, the May 3, 2017, letter which was sent to Ms. Morton's daughter (same first and last names as the Plaintiff) at the 1486 Fairgate Avenue address says that "CCC [Columbus Checkcashers, Inc.] is in a *position* to foreclose upon the aforesaid real estate. *** Upon receipt of this letter, please contact the undersigned to make arrangements to liquidate the aforesaid judgment. If you have not paid or made arrangements to pay CCC's judgment by the close of business on Friday, June 9, 2017, CCC *may foreclose* on the aforesaid real estate...," emphasis added. There was no lien pending against the Plaintiff's property either before or after the May 3, 2017, letter to the Plaintiff because the Plaintiff is not the judgment debtor and the lien only attaches to the property of the judgment debtor, Section 2329.02 R.C. and *Verba v. Ohio Casualty Ins. Co.*, 851 F.2d 811 (6th Cir., 1988). Further, there was no foreclosure pending against the Plaintiff either before or after the Defendants posted the May 3, 2017, letter to the Plaintiff. Indeed, the purpose of the letter to 1486 Fairgate was to *avoid* a foreclosure. As the Court noted in *Buckholz*, Morton's alleged "emotional injury" is not an injury in fact because fear of future harm is cognizable only when the feared harm is "certainly impending," at 865, quoting *Clapper*, supra. In the present case there was no foreclosure pending, *ever*. Further, the Defendants told the Plaintiff on May 8, 2017, that she was not the judgment debtor, there was no lien on her property and that Defendants would not file a foreclosure on her real estate.

In view of the foregoing cases, this Court lacks jurisdiction under Article III of the Constitution to entertain the Plaintiff's FDCPA claim because the Plaintiff's FDCPA claim does not meet the three elements of the "case" or "controversy" test under Article III of the Constitution, *Garland, supra,* at 436. Accordingly, the Defendants respectfully urge the Court to set aside the verdict of the jury as being legally unsupportable.

Respectfully submitted,

/s/ Jeffrey A. Catri

---

Jeffrey A. Catri (0019028)
**JEFFREY A. CATRI CO., L.L.C.**
995 South High St.
Columbus, OH 43206
614/224-3080
614/224-4870 (Fax)
jcatri@columbus.rr.com
Counsel for Defendants

## **CERTIFICATE OF SERVICE**

This is to certify that a true and accurate copy of the foregoing Supplemental Fed.R.Civ.P. 50(b) Motion was served upon the parties set forth below, via the Clerk's electronic filing system.

Respectfully submitted,

/s/ Jeffrey A. Catri

---

Jeffrey A. Catri (0019028)

Cc:

Gregory S. Reichenbach, Esq.
P.O. Box 711
Perrysburg, OH 43552
greg@reichenbachlaw.com
Counsel for Plaintiff

Ed Icove, Esq.
Icove Legal Group, Ltd.
Terminal Tower, Suite 3220
50 Public Square
Cleveland, OH 44113
ed@icovelegal.com
Counsel for Plaintiff

6