IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF OHIO
EASTERN DIVISION

Laura B. Morton,                                    Case No: 2:18-cv-445

       Plaintiff,                                Judge Graham

      v.                                           Magistrate Judge Deavers

Kevin John O'Brien, *et al.*,

       Defendants.

Opinion and Order

      This action under the Fair Debt Collection Practices Act is before the Court on defendants' post-trial motion for judgment as a matter of law under Rule 50(b), Fed. R. Civ. P. Defendants argue that plaintiff Laura B. Morton failed to produce sufficient evidence of an emotional distress injury to support the jury's award of $50,000 in compensatory damages.

      Rule 50(b) is entitled, "Renewing the Motion After Trial," and provides that if "the court does not grant a motion for judgment as a matter of law made under Rule 50(a)," then "the movant may file a renewed motion for judgment as a matter of law and may include an alternative or joint request for a new trial under Rule 59."

      It is undisputed here that defendants failed to move under Rule 50(a) for judgment as a matter of law at any time before the case was submitted to the jury. The Sixth Circuit has expressly held that a party "forfeit[s] its Rule 50(b) motion by not making a Rule 50(a) motion, which is not allowed based on a plain reading of the rules, due to constitutional concerns, due to our case law, and for policy reasons." *Hanover Am. Ins. Co. v. Tattooed Millionaire Ent., LLC*, 974 F.3d 767, 789 (6th Cir. 2020).

      The Sixth Circuit in *Hanover* reasoned that the "wording of Rule 50(b) shows that it is conditional on a Rule 50(a) motion having been made at trial," and observed that the 1963 Advisory Committee Note to Rule 50(b) states that a "motion for judgment notwithstanding the verdict will not lie unless it was preceded by a motion for a directed verdict made at the close of all the evidence." *Id.* at 780–81. The court also cited abundant case law reaching the same conclusion. *See, e.g.*, *Kay v. United of Omaha Life Ins. Co.*, 709 Fed. App'x 320, 328 (6th Cir. 2017) (stating that the requirement of first raising a Rule 50(a) motion "protects the plaintiff's Seventh Amendment right to a jury trial by requiring that parties raise important issues before the case is submitted to the

jury.") (internal quotation marks omitted); *Tortu v. Las Vegas Metro. Police Dep't*, 556 F.3d 1075, 1083 (9th Cir. 2009) ("Failing to make a Rule 50(a) motion before the case is submitted to the jury forecloses the possibility of considering a Rule 50(b) motion.").

Having failed to make a Rule 50(a) motion, defendants' only recourse is to raise a jurisdictional challenge. *See Hanover*, 974 F.3d at 780 n. 8; *Henderson ex rel. Henderson v. Shinseki*, 562 U.S. 428, 434 (2011). And they have done so. After filing their Rule 50(b) motion, defendants filed a "supplemental motion" arguing that the Court lacks jurisdiction because the plaintiff does not have standing under Article III to bring suit.

"To reach the merits of a case, an Article III court must have jurisdiction. 'One essential aspect of this requirement is that any person invoking the power of a federal court must demonstrate standing to do so.'" *Virginia House of Delegates v. Bethune-Hill*, __ U.S. __, 139 S. Ct. 1945, 1950, (2019) (quoting *Hollingsworth v. Perry*, 570 U.S. 693, 704 (2013)). "As a jurisdictional requirement, standing to litigate cannot be waived or forfeited." *Id.* at 1951.

There are three elements of Article III standing : "(1) a concrete and particularized injury, that (2) is fairly traceable to the challenged conduct, and (3) is likely to be redressed by a favorable decision." *Id.* at 1950. "A concrete injury is, like it sounds, real and not abstract. But that does not mean all concrete injuries must be tangible economic or physical harms. . . . [I]ntangible injuries can nevertheless be concrete." *Buchholz v. Meyer Njus Tanick, PA*, 946 F.3d 855, 861 (6th Cir. 2020) (internal quotation marks and citations omitted).

Defendants focus on the first element and cite the Sixth Circuit's decision in *Buchholz* for the proposition that a debtor's mere feeling of anxiety is not enough to constitute a concrete injury. According to defendants, plaintiff failed to establish that she suffered anything other than generalized "worry," "concern" or "aggravation" in reaction to defendants' debt-collecting efforts.

In *Buchholz* the Sixth Circuit stated that "in the context of psychological injuries, alleging 'anxiety' alone appears to fall short of cognizable injury as a matter of general tort law." 946 F.3d at 864. The court further explained that plaintiff's "problem is that his anxiety, as alleged, amounts to the fear of a future harm—an 'injury' that is rarely cognizable." *Id.* at 865. "[T]he fear of a future harm is not an injury in fact unless the future harm is 'certainly impending.'" *Id.* (quoting *Clapper v. Amnesty Int'l USA*, 568 U.S. 398, 410 (2013)). Because the debt collection letters which Buchholz received did not "threaten litigation" if he failed to pay the alleged debt, the court found that he had failed to establish a fear of future harm which was certainly impending. *Id.* Turning to the second

2

element (traceability), the court found that plaintiff again had fallen short because his alleged injury was a "self-inflicted injury" for which he lacked standing to sue. *Id.* at 866 (citing cases).

It is true that Mrs. Morton testified at trial that she felt worried, concerned and aggravated by defendant's debt-collecting tactics. But there was much more. Defendant's May 3, 2017 letter to Mrs. Morton stated that the creditor had secured a judgment lien against her home and was "now in a position to foreclose." Doc. 106 at PAGEID 676. The letter stressed that her "immediate attention" was required to pay the debt in one month because the creditor may foreclose on her home. *Id.* Feeling "threatened" by the letter, Mrs. Morton called defendant Mr. O'Brien, who made matters worse. Dec. 13, 2021 Tr. at pp. 9, 13. Mr. O'Brien said that he would not remove the lien, and he became "angry" and "rude" and made her feel "pressured" to pay the debt (owed by her daughter and not by plaintiff) and "threatened" that he would foreclose on her home. *Id.* at pp. 11, 13, 14, 16. Mrs. Morton testified that Mr. O'Brien's words and his angry and threatening tone made her feel "helpless" and "sick" because she believed she would lose her home of 46 years where she had raised her family. *Id.* at pp. 4, 14–16. Her emotional state manifested into physical problems of high blood pressure, feeling lightheaded and dizzy, and sleeplessness for about a month. *Id.* at pp. 16–17.

The evidence developed at trial amply supports the existence of a concrete injury. In contrast to the plaintiff in *Buchholz*, Mrs. Morton proved far more of an injury than self-inflicted anxiety. Mr. O'Brien's letter and statements over the phone threatened foreclosure if Mrs. Morton failed to pay the alleged debt. And his threats created a fear of harm that was certainly impending. The letter carried a sense of urgency – warning Mrs. Morton that the creditor had already obtained a lien upon her home, giving her a one-month deadline in which to pay the alleged debt, and cautioning her to give the matter her "immediate attention" and to "not ignore this letter." Doc. 106 at PAGEID 676. Mr. O'Brien elevated Mrs. Morton's fears by refusing her requests to remove the lien and making her feel after the phone call that foreclosure was more likely than it was before she called. Dec. 13, 2021 Tr. at p. 19. Further, Mrs. Morton testified to feeling pressured, threatened, helpless and sick, and she in turn experienced high blood pressure, dizziness and many sleepless nights.

The Court thus finds that plaintiff established at trial that she suffered a concrete injury fairly traceable to defendants' conduct. The nature of her injuries are well within the type recognized by courts as sufficiently concrete to satisfy the standing requirement. *See, e.g., Demarais v. Gurstel Chargo, P.A.*, 869 F.3d 685, 692 (8th Cir. 2017) (finding that alleged mental distress injuries caused by

3

abusive debt collection practices were sufficiently concrete); *Thome v. Sayer L. Grp., P.C.*, No. 20-CV-3058-CJW-KEM, 2021 WL 4690829, at *11 (N.D. Iowa Oct. 7, 2021) (holding that FDCPA plaintiff's emotional distress from believing that she would lose her home was sufficiently concrete); *Crandall v. Miller & Stevens, P.A.*, No. 20-CV-1793 (ECT/LIB), 2021 WL 4595535, at *3 (D. Minn. Oct. 6, 2021) (holding that FDCPA plaintiff's "stress, anxiety, migraines, and emotions and moods[,]" "problems sleeping, anxiety," and "PTSD and depression" were sufficiently concrete); *Benjamin v. Rosenberg & Assocs., LLC*, No. CV 19-3012, 2021 WL 3784320, at *6 (D.D.C. Aug. 26, 2021) (holding that FDCPA plaintiff's "mental distress" injuries caused by the false threat of foreclosure were "sufficiently concrete to pass Article III scrutiny"). *See also Mayfield v. LTD Fin. Servs., L.P.*, No. 4:20-CV-01966, 2021 WL 4481089, at *4 (S.D. Tex. Sept. 30, 2021) ("[M]ost courts across the country . . . have found that an alleged FDCPA violation alone is sufficient to confer standing because it establishes that the consumer suffered the type of harm Congress intended to prevent—abusive debt collection practices.") (citing cases).

Accordingly, defendants' post-trial motions for judgment as a matter of law (Docs. 111, 112) are DENIED.

s/ James L. Graham<br>
JAMES L. GRAHAM<br>
United States District Judge

DATE: March 31, 2022