IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF OHIO
EASTERN DIVISION

| | |
|---|---|
| Laura B. Morton, | Case No: 2:18-cv-445 |
| Plaintiff, | Judge Graham |
| v. | Magistrate Judge Deavers |
| Kevin John O'Brien, *et al.*, | |
| Defendants. | |

Opinion and Order

This matter is before the Court on two separate fee motions filed by plaintiff. The first is a motion for an award of attorneys' fees and costs following a jury verdict in plaintiff's favor. Plaintiff seeks an award of $93,831.35 in the first motion. The second motion is for a supplemental award of attorney's fees and costs which were incurred in, among other things, opposing defendants' post-judgment motions under Rule 50(b), Fed. R. Civ. P. Plaintiff seeks an award of $17,141.00 in the second motion.

Defendants oppose the following aspects of plaintiff's requests: the hourly rates sought by plaintiff's counsel; the number of hours expended by plaintiff's counsel in moving for attorneys' fees; and the number of hours expended by attorney Edward Icove, who joined in representing plaintiff for purposes of assisting with trial preparation and the jury trial.

**I.    Background**

Plaintiff Laura B. Morton brought this action under the Fair Debt Collection Practices Act, 15 U.S.C. § 1692e. She asserted that defendants, attorney Kevin John O'Brien and his law firm Kevin O'Brien & Associates Co., L.P.A., violated the FDCPA in the course of attempting to collect on a debt owed by her adult daughter. Plaintiff claimed that defendants violated the FDCPA in three ways: (1) by misrepresenting to plaintiff that she owed the alleged debt; (2) by threatening to foreclose on plaintiff's home if she failed to pay the alleged debt; and (3) by trying to collect the debt when defendants lacked authority to act on behalf of the creditor.

The procedural history of the case is relatively simple. Plaintiff originally filed suit in mid-2018 and amended her complaint once. Defendants moved to dismiss the amended complaint; the Court denied the motion. The parties conducted discovery, and the magistrate judge handled some

minor discovery disputes. Plaintiff herself moved for partial summary judgment on the issue of liability; the Court denied the motion in early 2020. Because of the COVID-19 pandemic, medical issues faced by Mr. O'Brien, and the personal bankruptcy of Mr. O'Brien, the jury trial did not take place until December 2021. Leading up to the trial, each side filed a motion in limine. The parties also filed proposed jury instructions, and plaintiff filed a trial brief.

A jury trial was held on December 13 and 14, 2022. Three witnesses were called: Mrs. Morton, Mr. O'Brien and a witness who appeared by video. The jury found for plaintiff on all three of the claimed FDCPA violations and awarded her $50,000 in actual damages and $1,000 in statutory damages.

Following the trial, defendants filed two separate motions under Rule 50(b), Fed. R. Civ. P., for judgment as a matter of law. The Court denied both motions.

## II. Plaintiff's First Motion for an Award of Attorneys' Fees and Costs

The FDCPA mandates that a plaintiff in a "successful action to enforce" liability is entitled to an award of "the costs of the action, together with a reasonable attorney's fee as determined by the court." 15 U.S.C. § 1692k(a)(3). Plaintiff has moved for an award of attorneys' fees and costs, and her counsel has submitted supporting declarations, itemized billing entries, and materials relating to prevailing hourly rates for consumer law attorneys in the Columbus legal community.

### A. The Lodestar Method

The court determines an award of attorney's fees by using the lodestar method, under which a reasonable hourly rate is multiplied by the number of hours reasonably expended on the litigation. *Lee v. Javitch, Block & Rathbone, LLP*, 568 F.Supp.2d 870, 879–80 (S.D. Ohio 2008) (citing *City of Burlington v. Dague*, 505 U.S. 557, 562 (1992)). Because of its objectivity, "there is a strong presumption that the lodestar figure is reasonable." *Perdue v. Kenny A. ex rel. Winn*, 559 U.S. 542, 554 (2010). The reasonable hourly rate should be determined according to "the 'prevailing market rate[s] in the relevant community.'" *Adcock-Ladd v. Sec'y of Treasury*, 227 F.3d 343, 350 (6th Cir. 2000) (quoting *Blum v. Stenson*, 465 U.S. 886, 895 (1984)). The reasonable number of hours will not include "hours that are excessive, redundant, or otherwise unnecessary." *Hensley*, 461 U.S. at 434. The lodestar method is designed to attract competent counsel to vindicate a person's constitutional rights but is not designed to serve as a windfall for attorneys. *Coulter v. Tenn.*, 805 F.2d 146, 149 (6th Cir. 1986).

2

**B.      Reasonable Hourly Rates**

Two attorneys represented plaintiff. Gregory Reichenbach represented Mrs. Morton throughout the course of the lawsuit. Mr. Reichenbach has been practicing law since 2004, and his practice focuses on representing lower-to-middle income individuals in consumer law matters. As he did here, Mr. Reichenbach represents clients on a contingency basis. Beginning in June 2021, plaintiff was also represented by Edward Icove, who has been practicing law since 1977. He has practiced in numerous legal areas, including consumer law.

In the motion for an award of attorneys' fees, Mr. Reichenbach seeks approval of an hourly rate of $425 and Mr. Icove requests an hourly rate of $450.

"A trial court, in calculating the reasonable hourly rate component of the lodestar computation, should initially assess the prevailing market rate in the relevant community." *Adcock-Ladd*, 227 F.3d at 350 (internal quotation marks and emphasis omitted). The court looks to the rate "which lawyers of comparable skill and experience can reasonably expect to command within the venue of the court." *Id.*

Plaintiff's counsel cite three sources of information in support of the reasonableness of the hourly rates they seek. The first is the United States Consumer Law Attorney Fee Survey Report for 2017–2018. The second is the Ohio State Bar Association's report entitled The Economics of Law Practice in Ohio in 2019. The third is the declaration of Ronald L. Burdge, an Ohio attorney whom plaintiff offers as an expert in the matter of legal fees in the field of consumer law. The Court notes that Mr. Burdge is the author and editor of the United States Consumer Law Attorney Fee Survey Report for 2017–2018, which he first published in 1999. Mr. Burdge states that he is in the midst of preparing the next edition of the Report.

The United States Consumer Law Attorney Fee Survey Report for 2017–2018 is based on national data gathered from the results of surveys sent to attorneys practicing in various consumer law fields and gathered from court and administrative decisions on attorneys' fees in consumer litigation. Doc. 110-3 at PAGEID 832–33. The Fee Survey Report defines "consumer law" to include the following areas:

1. Consumer Bankruptcy
2. Consumer Protection Class Action
3. Credit Rights (FCRA, FDCPA, ECOA, TILA, Credit Discrimination, Credit Reporting, Debt Defense, etc.)
4. Mortgage (Foreclosure Defense, RESPA, HOLA, Housing Rights, Landlord-Tenant, other real estate rights enforcement laws, etc.)

3

>   5. Vehicle Litigation (Autofraud, Lemon Law, Warranty Law, Vehicle-related UDAP claims, Repossession Law, etc.)
>   6. TCPA (the Telephone Consumer Protection Act)
>   7. Other (Common Law Fraud, unfair and deceptive acts, etc.)

*Id.* at PAGEID 826.

The Fee Survey Report contains median hourly rates for each state and major metropolitan area, including Columbus. The rates are further broken down by the various sub-fields within the consumer law practice and by the number of years of attorney experience in practicing consumer law.

According to the Report, the median rate for all attorneys practicing consumer law in Columbus was $333 for 2017–2018. Factoring in the number of years of experience, the median for attorneys, like Mr. Reichenbach with 16 to 20 years of experience in consumer law was $425, and the median for attorneys, like Mr. Icove, with over 41 years of experience was $525. *Id.* at PAGEID 1228–29.

The median rate in Columbus specifically for the credit rights field was $325. *Id.* at PAGEID 1228. The Report does not further break the credit rights median rate in Columbus down by number of years of experience.

According to Mr. Burdge, based on preliminary data for the next edition of the Fee Survey Report, he believes that the median rate in Columbus for attorneys practicing in the consumer law field and with 16 to 20 years of experience is now $500. He believes that the rate for attorneys with over 41 years of experience is now $618. Doc. 110-5 at PAGEID 1515–16. Mr. Burdge adds that he is currently attempting to include reputational factors into the next edition of his Report. According to the results he has gathered, both Mr. Reichenbach and Mr. Icove have favorable reputations, which would enable them to command above-median rates. *Id.*

Turning to the OSBA's Report, the Court notes that it has relied on this resource in past cases to help determine reasonable hourly rates. *See, e.g., Corbin v. Steak n Shake, Inc.*, No. 2:17-CV-1043, 2020 WL 1899124, at *2 (S.D. Ohio Apr. 17, 2020), *aff'd*, 861 Fed. App'x 639 (6th Cir. 2021); *Hines v. DeWitt*, No. 2:13-cv-1058, 2016 WL 2342014 at *3 (S.D. Ohio May 4, 2016), *aff'd sub nom. Hines v. City of Columbus*, 676 Fed. App'x 546 (6th Cir. 2017). According to the OSBA Report, the median hourly rate in downtown Columbus is $300 and the median rate in suburban Columbus $250. The median rate in Ohio for attorneys with over 15 years of experience is $250. The median rate in Ohio for attorneys practicing in the consumer law field is $435. Doc. 110-4 at PAGEID

1441. It should be noted that the OSBA Report, unlike the United States Consumer Law Attorney Fee Survey Report, does not contain particularized data whereby one could find the median rate for Columbus attorneys who practice in the consumer law field and have a certain number of years of experience.

Defendants argue that the rates sought by plaintiffs' counsel are too high. Citing the OSBA Report and a 2021 Legal Trends Report published by a legal software company named Clio, defendants argue that a reasonable hourly rate would be $250. *See* Doc.118-4 at PAGEID 1829. However, defendants cite only the overall statewide medians for Ohio published by these two sources. The statewide median rate is of limited utility in determining a reasonable hourly rate for lawyers of comparable skill and experience to plaintiff's counsel in the central Ohio legal market and in the consumer law practice area.

Defendants also cite recent decisions of this court approving of attorney fees in FDCPA cases. *See Blevins v. MSV Recovery LLC*, No. 1:19-CV-276, 2020 WL 4365634, at *6 (S.D. Ohio July 30, 2020) (approving plaintiff's unopposed request of an hourly rate of $275); *Leonard v. John Doe Corp.*, No. 2:19-CV-2142, 2020 WL 3642562, at *3 (S.D. Ohio July 6, 2020) (approving plaintiff's unopposed request of an hourly rate of $270); *Miller v. Ability Recovery Servs., LLC*, No. 1:18-CV-266, 2019 WL 1227777, at *5 (S.D. Ohio Mar. 15, 2019) (approving plaintiff's unopposed request of an hourly rate of $250). The Court must note that in each of these three cases, plaintiff obtained a default judgment and sought a modest attorney's fee award.

More informative is the Sixth Circuit's opinion in *Dowling v. Litton Loan Servicing LP*, 320 Fed. App'x 442, 447 (6th Cir. 2009), a case originating from this court. The case went to a bench trial on plaintiff's FDCPA claim. Plaintiff prevailed and received $26,000 in actual and statutory damages. The district court found that $300 was a reasonable hourly rate, based on local billing rates, the thirty-years of experience of plaintiff's counsel, and plaintiff's counsel's exemplary representation of his client. The Sixth Circuit affirmed the fee award, rejecting defendant's argument that a reasonable hourly rate should not have exceeded $250. It found that the rate approved by the district court was well within the range of reasonableness, in light of the counsel's experience and skill level. 320 Fed. App'x at 447. The court noted, "'Paying counsel in FDCPA cases at rates lower than those they can obtain in the marketplace is inconsistent with the congressional desire to enforce the FDCPA through private actions, and therefore misapplies the law.'" *Id.* (quoting *Tolentino v. Friedman*, 46 F.3d 645, 653 (7th Cir. 1995)).

The Court finds that $400 is a reasonable hourly rate for Mr. Reichenbach and that $425 is a reasonable hourly rate for Mr. Icove. According to the Fee Survey Report, the median hourly rate in Columbus for attorneys practicing in the credit rights field was $325 in 2017–18. At least four years have now passed since that Report and Mr. Burdge's declaration indicates, not surprisingly, that rates should normally be adjusted upward over time. *Cf. Dowling*, 320 Fed. App'x at 447 (cautioning against a court over-relying on the rates approved in past cases because it would have the effect of fixing them in time). Further, 14 years have passed since the district court in *Dowling* approved a rate of $300 for an experienced attorney who provided exceptional representation. In this Court's observation, both Mr. Reichenbach and Mr. Icove are experienced, skilled attorneys with excellent reputations who provided Mrs. Morton with exemplary legal representation and achieved an extraordinary result. In light of Mr. Reichenbach's and Mr. Icove's experience, skill and performance, and considering the Fee Survey Report's and the OSBA Report's data concerning local billing practices, the Court finds that $400 is an appropriate rate for Mr. Reichenbach and that $425 is an appropriate rate for Mr. Icove. *See Johnson v. Cheek Law Offices, LLC*, Case No. 2:11-cv-1130 (S.D. Ohio May 8, 2014) (Doc. 51 at PAGEID 354) (awarding Mr. Icove an hourly rate of $350 in 2014).

    **C.**    **Reasonable Number of Hours Worked**

The second part of the lodestar method requires the Court to determine the reasonable number of hours expended. "[T]he prevailing party's lawyer should be the first gatekeeper in this task, exercising the same billing judgment she would with one's client." *Hines*, 2016 WL 2342014 at *4 (citing *Hensley v. Eckerhart*, 461 U.S. 424, 434 (1983). The Court's focus is on "mixed questions about whether the lawyer used poor judgment in spending too many hours on some part of the case or by unnecessarily duplicating the work of co-counsel." *Coulter*, 805 F.2d at 151. Hours which are excessive, redundant, or otherwise unnecessary will not be counted. *Hensley*, 461 U.S. at 434. While representation by multiple legal counsel "can be productive," "the danger of duplication [is] a waste of resources which is difficult to measure." *Coulter*, 805 F.2d at 151-52.

    **1.**    **Mr. Reichenbach**

Mr. Reichenbach has submitted a declaration and an itemized billing statement with detailed descriptions of his services. From the start of his representation of Mrs. Morton through trial and the drafting of the motion for attorney's fees, Mr. Reichenbach billed 147.3 hours.

Of the 147.3 hours which Mr. Reichenbach billed, 128.8 hours were billed from the start of his representation through the end of the trial. In the Court's view, this is a modest and reasonable

amount for a case that went through motions to dismiss and for summary judgment and a two-day trial. Defendants have not raised any challenge to Mr. Reichenbach's hours from the inception of the matter through the conclusion of the trial. After an examination of the billing entries, the Court finds that the 128.8 hours billed by Mr. Reichenbach during this timeframe are not excessive, redundant, or otherwise unnecessary and that they are therefore reasonable.

Defendants, however, do object to the total amount of hours Mr. Reichenbach spent on drafting the motion for attorneys' fees. The billing statement contains several entries which are marked as "drafting" the fee motion. Doc. 110-1 at PAGEID 782–83. These entries total 12.4 hours. The billing statement also include entries for time spent doing legal research and preparing the declarations of Mr. Reichenbach and Mr. Burdge, which add 6.1 hours. Defendants argue that the motion is fairly standard and was likely based in part on boilerplate language. Plaintiff responds that it took some amount of time to customize the motion for this particular case.

The Court finds that defendants have the better of this argument. A court may award fees for "time spent in preparing, presenting, and trying attorney fee applications." *Coulter*, 805 F.2d at 151. There is no bright-line cap on "fees for fees compensation," but the amount of such fees must satisfy the reasonableness standard. *The Ne. Ohio Coal. for the Homeless v. Husted*, 831 F.3d 686, 725 (6th Cir. 2016). If the reasonableness standard is not satisfied, district courts have the discretion to make across-the-board reductions to attorneys' fees. *See Ohio Right to Life Soc., Inc. v. Ohio Elections Comm'n*, 590 Fed. App'x 597, 604–05 (6th Cir. 2014). A district court should explain the basis for why it is doing so – whether it is based on duplicative billing, excessive hours, limited success, inadequate documentation, and so forth. *Id.*

The Court appreciates the thoroughness and quality of plaintiff's motion and supporting materials. Even so, the total amount of time – 18.5 hours – spent by Mr. Reichenbach is excessive in the Court's view. It is more time than the approximately 13 hours Mr. Reichenbach spent on the summary judgment stage and related motion to strike. It is also excessive when considering that Mr. Icove separately billed nearly 5 hours for post-trial work, which was largely spent on the fee motion. By comparison, in a fee dispute this Court handled somewhat recently, plaintiff's counsel billed (and the Court approved) 5.3 hours in connection with plaintiff's motion for fees and costs. *See Corbin*, 2020 WL 1899124, at *6 (employment discrimination case with a five-day trial).

The Court will exercise its discretion and allow 50% of the hours worked on the first fee motion. The Court thus finds that 9.3 hours is a reasonable number of hours for Mr. Reichenbach counsel to have spent preparing the fees motion.

Accordingly, the Court will allow 138.1 hours for Mr. Reichenbach: 128.8 hours from the start of representation though trial, plus 9.3 hours for the fees motion.

### 2. Mr. Icove

Mr. Icove began representing plaintiff in June 2021 for the purpose of helping to prepare the case for trial. He billed a total of 56.7 hours. Of those hours, 27.5 hours were for pre-trial preparation, 24.3 hours for the trial days, and 4.9 hours for post-trial work.

Defendants object to the number of hours billed by Mr. Icove. They argue that it should not have taken two attorneys to try a two-day trial. In particular, they note that Mr. Icove did not make the opening or closing statement or examine or cross-examine any witnesses.

Having two attorneys, especially for a case which goes to trial, is not unreasonable. *See Norman v. Hous. Auth. of City of Montgomery*, 836 F.2d 1292, 1302 (11th Cir. 1988); *James v. Frank*, 772 F. Supp. 984, 1001 (S.D. Ohio 1991). The key inquiry is whether the attorneys efficiently used their time, avoiding excessive and duplicative work. *See Glover v. Johnson*, 138 F.3d 229, 252 (6th Cir. 1998).

Looking at the pre-trial tally of 27.5 hours, the Court views this amount as somewhat high in light of the fact that Mr. Icove was not preparing to engage in voir dire examination, deliver opening or closing remarks or examine witnesses. The Court recognizes that Mr. Icove had to spend some amount of time to learn the case and that his billing entries reflect that he worked on the motions in limine, prepared proposed jury instructions, and helped co-counsel prepare for jury selection. Mr. Reichenbach states that Mr. Icove provided valuable insights in readying plaintiff's case for trial and in analyzing the strengths of defendants' arguments and evidence. Mr. Reichenbach states that Mr. Icove's guidance helped save him time and resulted in an overall efficiency in trial preparation. Considering Mr. Icove's role in pre-trial preparation, the Court finds that 75% of the time he billed, or 20.6 hours, is reasonable.

With respect to the 24.3 hours billed for the trial days, defendants raise a concern that Mr. Icove billed more hours than did Mr. Reichenbach for those days. Excluding time for travel, Mr. Icove billed 2.7 hours more than Mr. Reichenbach did. Upon examination of the time entries, the Court is satisfied that Mr. Icove spent a reasonable amount of time, outside of the in-court hours, working on remaining evidentiary issues and jury instruction issues which the Court addressed on the second day of trial. Mr. Reichenbach billed only minimal time, if at all, on these matters, which he appears to have delegated to Mr. Icove.

Lastly, Mr. Icove billed 4.9 hours for post-trial work. Defendants again object that the billing on the present attorneys' fees motion is too high. As explained above with respect to Mr. Reichenbach, the Court agrees that the number of hours billed on the fees motion was excessive and will allow Mr. Icove 50% of the requested hours. The Court finds that 2.5 hours is a reasonable amount of time for Mr. Icove to have prepared his time records and declaration and to have reviewed and edited Mr. Reichenbach's draft fee motion.

Accordingly, the Court will allow 47.4 hours for Mr. Icove: 20.6 hours for the pre-trial phase, 24.3 hours on the trial days, and 2.5 hours post-trial.

### D. Summary of Approved Lodestar Rates and Hours

The Court allows 138.1 hours for Mr. Reichenbach at an hourly rate of $400. His portion of the lodestar amount is $55,240.00.

The Court allows 47.4 hours for Mr. Icove at an hourly rate of $425. His portion of the lodestar amount is $20,145.00.

The total lodestar amount is $75,385.00. Plaintiff does not seek the application of a multiplier to the lodestar amount.

### E. Costs

Plaintiff next seeks an award of costs of $5,713.85. The costs include filing fees, paralegal services, travel, and the cost for Mr. Burdge to render expert services. *See* 28 U.S.C. § 1920; *Waldo v. Consumers Energy Co.*, 726 F.3d 802, 827 (6th Cir. 2013).

Though defendants do not object to the costs sought by plaintiff, the Court believes that the expert fee request merits further scrutiny. Plaintiff seeks $3,802.50 for Mr. Burdge's expert services.

The Court should only shift expert witness fees when there exists "explicit statutory authority" to do so. *Crawford Fitting Co. v. J. T. Gibbons, Inc.*, 482 U.S. 437, 445 (1987); *see also L & W Supply Corp. v. Acuity*, 475 F.3d 737, 741 (6th Cir. 2007) (holding that expert fees may not be taxed as costs under Fed. R. Civ. P. 54(d)). Several statutes do explicitly allow an award of expert fees. *See, e.g.*, 42 U.S.C. § 2000e-5(k) ("[T]he court, in its discretion, may allow the prevailing party. . . a reasonable attorney's fee (including expert fees) as part of the costs . . . ."); 29 U.S.C. § 2617(a)(3) ("The court in such an action shall, in addition to any judgment awarded to the plaintiff, allow a reasonable attorney's fee, reasonable expert witness fees, and other costs of the action to be paid by the defendant.").

The FDCPA contains no language shifting expert fees. It provides that "in the case of any successful action" the court may award "the costs of the action, together with a reasonable

9

attorney's fee as determined by the court." 15 U.S.C. § 1692k(a)(3). The Court thus declines to award expert fees to plaintiff.

Accordingly, costs will be awarded to plaintiff in the amount of $1,911.35.

### III. Plaintiff's Supplemental Motion for Attorneys' Fees and Costs

Following trial, defendants filed two motions for judgment as a matter of law. In the first, defendants argued that: plaintiff did not produce sufficient evidence to support the verdict; defendants produced sufficient evidence to prevail on their bona fide error defense as a matter of law; and the Court should have excluded certain evidence from trial. In the second Rule 50(b) motion, defendants argued that the Court lacked subject matter jurisdiction.

Plaintiff seeks a supplemental award of attorneys' fees that is threefold in nature: (1) for the work rendered in opposing defendants' Rule 50(b) motions; (2) for preparing a reply brief in support of plaintiff's first motion for an award of attorneys' fees; and (3) for preparing the supplemental fee motion.

Mr. Reichenbach has submitted a billing statement showing 30.1 hours worked; Mr. Icove's statement shows 9.3 hours worked. Breaking the hours down into the three categories, the statements show roughly that Mr. Reichenbach billed 21.9 hours and the Mr. Icove billed 6.9 hours in opposing defendants' Rule 50(b) motions. In preparing the reply brief, Mr. Reichenbach billed 3.3 hours and Mr. Icove billed 2.2 hours. In preparing the supplemental motion, Mr. Reichenbach billed 4.9 hours and Mr. Icove billed 0.2 hours. In addition, Mr. Reichenbach paid $163.50 in costs to obtain a trial transcript.

Again, the work of plaintiff's counsel is thorough and of high-quality. However, the Court finds that the number of hours billed is excessive. Of the three categories, the first (opposing the two Rule 50(b) motions) was the most complicated and was made necessary by defendants' filings. The Court will allow 75% of the time requested by counsel, which equates to 16.4 hours for Mr. Reichenbach and 5.2 hours for Mr. Icove.

With respect to the second and third categories, the Court finds that allowing 50% is reasonable for the reasons explained above with respect to the fees sought for preparing the first fee motion. Thus, the Court will allow Mr. Reichenbach a total of 4.1 hours and Mr. Icove a total of 1.2 hours for work in preparing the reply brief and the supplemental motion.

In summary, the Court allows 20.5 hours for Mr. Reichenbach at an hourly rate of $400. His portion of the lodestar amount is $8,200.00.

The Court allows 6.4 hours for Mr. Icove at an hourly rate of $425. His portion of the lodestar amount is $2,720.00.

The total lodestar amount is $10,920.00.

Additionally, the Court allows plaintiff $163.50 in costs.

### IV.     Conclusion

The Court thus grants plaintiff's first motion for an award of attorneys' fees and costs (doc. 110), and awards a total of $77,296.35 in connection with that motion.

The Court grants plaintiff's supplemental motion for an award of attorneys' fees and costs (doc. 120), and awards a total of $11,083.50 in connection with that motion.

The total award of attorneys' fees and costs to plaintiff is $88,379.85.

                                                        s/ James L. Graham  
                                                        JAMES L. GRAHAM  
                                                        United States District Judge

DATE: May 24, 2022